106 N.J. Super. 161 (1969)
254 A.2d 534
GUSTAVE E. WIEDENMAYER, ET AL., ETC., PLAINTIFFS-RESPONDENTS,
v.
JOHN SEWARD JOHNSON, JR. ET AL., DEFENDANTS-RESPONDENTS, AND CHARLES E. VILLANUEVA, GUARDIAN AD LITEM FOR BRUCE ALEXANDER JOHNSON AND JENNIE ANNE JOSEPHINE JOHNSON, MINORS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1969.
Decided June 17, 1969.
*162 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Charles E. Villanueva argued the cause for appellant (Messrs. Van Riper, Belmont & Villanueva, attorneys; Mr. John J. O'Grady, of the New York Bar, and Messrs. Cadwalader, Wickersham & Taft, of counsel).
Mr. James C. Pitney argued the cause for plaintiff-respondents (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Thomas J. Bitar argued the cause for R. Carter Nicholas, guardian ad litem for certain minors (Messrs. Jeffers and Dillon, attorneys).
*163 Mr. Alfred C. Clapp argued the cause for defendant-respondent, guardian ad litem for John Seward Johnson, III.
The opinion of the court was delivered by KILKENNY, J.A.D.
Charles E. Villanueva, as guardian at litem for Bruce Alexander Johnson and Jennie Anne Josephine Johnson, appeals from that portion of the Chancery Division judgment, entered on May 29, 1968, which provides:
"1. The determination of the plaintiffs to distribute and pay over to John Seward Johnson, Jr. all of the Trust Property to enable him to establish a new trust in the form annexed hereto is confirmed, ratified and approved, and the plaintiffs are authorized to make such distribution at such time as they shall determine."
Plaintiffs cross-appeal from that part of the same judgment, which provides:
"5. Charles E. Villanueva is allowed $40,000 for his services as Guardian Ad Litem, as well as his unreimbursed expenses and out-of-pocket disbursements aggregating $306.00."
They assert that the allowance was excessive and should be reduced.
Alfred C. Clapp, as guardian ad litem for John Seward Johnson, III, also cross-appeals, and for the same reason, from that part of the judgment allowing "Charles E. Villanueva * * * $40,000 for his services as Guardian Ad Litem."
We affirm the portions of the judgment brought before us for review, both as to the main appeal and as to the cross-appeals.
As to the main appeal we affirm essentially for the reasons expressed by Judge Kingfield in his oral opinion rendered at the close of the proofs, and for the further reasons expressed in the brief supplement herein.
As to the cross-appeals covering the $40,000 award made to Charles E. Villanueva for his services as guardian *164 ad litem, we find a proper exercise of the discretion vested in the trial judge in such matters, based upon the totality of the circumstances, as evidenced by the record herein, especially in the light of the fact that the subject matter of this trust is valued at approximately $18,000,000 and the litigation involved important and difficult issues of law and equity.
The inter vivos trust in issue was one of six substantially similar trusts which John Seward Johnson established in 1944 for each of his six children. We are concerned herein only with the one established essentially for the benefit of his son John Seward Johnson, Jr. The original corpus of the trust consisted of shares of common stock of Johnson & Johnson, Inc., and the approximate value of that corpus as of this time is the large sum mentioned above.
The trustees were directed to pay to the son "so much of the net income in any year as the trustees in their absolute and uncontrolled discretion may deem to be for his best interests," following his attainment of majority. We are not concerned herein with the payment of income. Our concern is with the power given to the trustees:
"3. To distribute the Trust Property as follows:
(a) from time to time and whenever in their absolute and uncontrolled discretion they deem it to be for his best interests, to use for or to distribute and pay over to John Seward Johnson, Jr., or to his guardian ad litem if he is under the age of twenty one (21) years, to be his absolutely, outright and forever, any or all of the Trust Property."
The son reached his majority a number of years ago.
"The absolute and uncontrolled discretion" of the trustees to distribute and pay over to the son "any or all of the Trust Property" is limited only by the trustees' determination that such distribution of the corpus is for the son's "best interests." The trustees so decided herein. If they could make that distribution to the end, as the trust indenture expressly stated, that the trust property would be the son's "absolutely, outright and forever," it seems logical *165 to conclude that the trustees could, to safeguard the son's best interests, condition the distribution upon his setting up a substituted trust. The son is satisfied with that condition and the distribution was approved and confirmed, a copy of the son's trust agreement being annexed to the judgment.
The son's "best interests" is not defined in his father's trust indenture. The expression is not limited to a finding that distribution must be to the son's best "pecuniary" interests. His best interests might be served without regard to his personal financial gain. They may be served by the peace of mind, already much disturbed by matrimonial problems, divorce and the consequences thereof, which the new trust, rather than the old contingencies provided for in his father's trust indenture, will engender. Of what avail is it to rest one's "best interests" on a purely financial basis, and without regard to the effect upon a man's mind, heart and soul, if the end result would produce a wealthier man, but a sufferer from mental anguish?
The creator of this inter vivos trust was obviously concerned primarily with his son's best interests. The interests of others were important, but they were only secondary in relation to the son. Courts may not substitute their opinions as to the son's "best interests," as opposed to the opinion of the trustees vested by the creator of the trust with the "absolute and uncontrolled discretion" to make that determination. The trustees' decision herein was made in good faith, after consideration of all the facts and attendant circumstances, and for reasonably valid reasons. Only unwarranted judicial interference would induce a negating of the course pursued by the trustees.
The basis of the argument by those attacking the action of the trustees is that the children, Bruce and Jennie, would suffer under this new arrangement a loss of their contingent remainder interest, provided for in the settlor's original trust indenture. However, if distribution of the corpus of the trust were made to the son absolutely, as permitted within the unqualified discretion of the trustees, as opposed *166 to the challenged distribution subject to the condition imposed, the same loss of the contingent remaindermen's interest would equally be effected. Thus, these children are not suffering by this approved new setup the loss of any vested remainder interest. The basic intention of the original creator of the trust, that the trustees' decision should serve the son's best interests, is not being defeated by the distribution made by the trustees.
CONFORD, S.J.A.D. (dissenting in part).
I concur in the court's affirmance of the counsel fee awarded appellant guardian ad litem. I dissent from the affirmance of the trial court's order of approval of the so-called "distribution" by the trustees of the trust corpus to the life beneficiary, John Seward Johnson, Jr. ("Seward" hereinafter), solely for the reason that I do not believe that what the trustees propose to do constitutes a distribution at all, within the fair intent of the trust instrument, but rather an impermissible alteration of the substantive trust terms.
I conceive that what has happened here is the formulation by Seward and the trustees of a plan simply to alter the provisions of the trust so as to eliminate therefrom the contingent remainder to Seward's "issue in equal shares per stirpes," in the event of his failing effectively to exercise a power of appointment by will, and to substitute a different contingent remainder which would, among other things, disqualify two of his children, Bruce and Jennie, eo nomine, from participation as his "issue" under the contingent remainder formulated by the settlor. The plan would also disqualify those children as potential appointees under any will of Seward.
The proposal approved by the trial court was concededly submitted to the trustees by Seward's counsel. The record of this case indicates beyond doubt that the trustees had previously refused a number of requests by Seward for advance of part of the principal trust estate, and this primarily for a reason I need not specify but well-known to all involved *167 in this case. They are satisfied that his needs are amply provided for by their distribution to him of all of the net income of the estate. They have been making such distribution and will continue to do so. They do not now intend, and never have, "to use for or to distribute and pay over" to Seward "to be his absolutely, outright and forever," any part or all of the trust property, as the trust instrument empowers them to do in their absolute discretion.
The specific proposal approved below is for the trustees to execute an instrument purporting to distribute the trust estate to Seward, but expressly conditioned upon his simultaneously executing an irrevocable trust of the whole estate back to the trustees on the identical trust terms, insofar as control of distribution of the trust principal to Seward thereafter is concerned, and otherwise significantly altered from the original trust terms primarily to cut out Bruce and Jennie as eligible contingent remaindermen after Seward's life estate or as eligible appointees under Seward's power of appointment by will. There is no question whatever that the trustees would not transfer anything to Seward without the simultaneous transfer back by him in trust. And this charade is approved solely in order to promote Seward's present peace of mind in knowing that Bruce and Jennie are forever and irrevocably disqualified as potential sharers in the settlor's disposition.[1]
My basic disagreement with the majority can be simply stated. Preliminarily, I do not reach the question as to the scope of the trustees' discretion. What concerns me is that there has neither been, nor proposed, any distribution, but only the going through the motions of one. The terms of the trust instrument relating to distribution call for realistic, not sophistic, construction. When the transaction here approved *168 is consummated, as it must be, in a single, integrated exchange of signed documents, Seward will walk out of the closing transaction with not one iota of greater beneficial interest, present or future, in the principal of the trust estate, than when he walked into the closing to play his part. But the trust terms will, in effect, have been materially altered. That alteration will have been the only net result of the arrangement  just as it is the only result intended by the trustees.
The argument advanced by respondents is that the proposal is for a conditional distribution  that if the trustees may "use for" or "distribute to" Seward all of the principal absolutely, as the instrument states, they may do so conditionally  and this is all they have done here, i.e., distributed it to him on condition that he turn it back to the trustees on the proposed terms. But the obvious fallacy of this approach is that when the smoke clears, the whole trust estate, every whit and tittle of it, is back with the trustees, and no part of it has been used for or distributed to Seward, conditionally or otherwise. Certainly, when the trust document speaks of the trustees using all or part of the principal for Seward, or distributing it to him, it contemplates using up, consuming, or expending such part or the whole, for such purpose. But here, after having purportedly been used for or distributed to Seward, the whole remains intact in the hands of the trustees, as before, for potential use for or distribution to him thereafter. It may accurately be said that the trust estate will have been manipulated for Seward's peace of mind, but not that it has been "used for" him or "distributed to" him, in the common and reasonable signification of such terms when employed in a trust instrument in as clear and conventional a manner as here.
The fact noted in the opinion of the majority that Bruce and Jennie have no vested remainder in the trust, in that if a genuine distribution of principal were made to Seward they would automatically lose their contingent remainder interest therein pro tanto, is not germane to the issue which *169 concerns me. This is the lack of power of the trustees to impair their interest, albeit contingent, absent a genuine distribution to Seward.
No comfort can be taken by the respondents from Capron v. Luchars, 110 N.J. Eq. 338 (Ch. 1932), affirmed per curiam 112 N.J. Eq. 373 (E. & A. 1933), upon which they rely. There the trust was not irrevocable, as here, (par. 11), but expressly subject to termination at any time in the discretion of the trustee.[2] The arrangement challenged there was a voluntary recasting of the trust, after termination by the trustee, by what the court treated as a contract between the settlors-beneficiaries, having full capacity, and the trustee, the former voluntarily agreeing as part of the arrangement to turn over a portion of the trust res to the trustee. The settlors were held to their agreement by the court notwithstanding the intervening death of the trustee (three judges in the Court of Errors and Appeals dissenting). The distinctions between that situation and the present are too obvious and numerous to require extended exposition here.
It remains that the instant trustees will not, actually, in substance as distinguished from form, have distributed the trust estate to Seward or used it for him. They therefore have no power under the trust instrument to do what is here proposed.
NOTES
[1] Even if Seward changes his mind 10 or 20 years from now and decides Bruce and Jennie should share, the terms of the proposed new trust will make that desire impossible of attainment (unless, of course, the trustees agree for the sake of Seward's then peace of mind to another "wash" exchange of trusts as in the instant manner).
[2] The instant trust was not absolutely terminable at the mere will of the trustees, as in Capron. Termination here would merely follow as a legal incident of any distribution of principal, pro tanto. Absent distribution, there can be no termination.