AUGUSTUS P. LORING & others, trustees,[1] *vs.* ANNE
KARRI-DAVIES & others, trustees[2]
(and a companion case[3]).

Suffolk.    March 5, 1976. — November 16, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Trust,* Power of appointment.  *Devise and Legacy,* Power of appoint-
ment.

Where it did not appear that the donor of special powers of appoint-
ment intended the donee thereof to exercise such powers by appoint-
ments in further trust, the donee's attempt to exercise the powers by
appointment to the trustees of new trusts created by the donee was
without effect.  [349-353]  BRAUCHER, J., dissenting, with whom KAP-
LAN, J., joined.
This court declared its intention to apply to special powers of appoint-
ment granted in instruments executed by donors after the date of

---

[1] The plaintiffs in the first action are Augustus P. Loring, Lawrence
Coolidge and Walter Karri-Davies, trustees under article Fifth of the
will of Ruth G. Foster.

[2] The defendants in the first action are Anne Karri-Davies, Jean G.
Wadsworth, Patricia H. Pittore and John Howard, all of the children
of Ruth G. Foster, and Augustus P. Loring and Walter Karri-Davies,
surviving trustees under article Seventeenth of the will of William A.
Gaston.

[3] The plaintiffs in the second action are Augustus P. Loring, Lawrence
Coolidge and Walter Karri-Davies, trustees under article Sixth of the
will of Ruth G. Foster. The defendants in this action are the same four
children of Ruth G. Foster who are named in the preceding footnote,
and Shawmut Bank of Boston, N.A., formerly The National Shawmut
Bank of Boston, as trustee under an irrevocable indenture of trust
created by William A. Gaston on June 16, 1915, for the benefit of Ruth
Gaston, later by marriage Ruth G. Foster, and others.

this opinion the rule of construction contained in the Restatement of Property, § 358 (e) (1940) to the effect that "[i]f, but only if, the donor does not manifest a contrary intent, the donee of a special power can effectively ... (e) appoint interests to trustees for the benefit of objects." [353-355]

CIVIL ACTION commenced in the Probate Court for the county of Suffolk on June 6, 1975.

The case was reported by *Fitzpatrick, J.,* to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Samuel B. Potter* for Augustus P. Loring & others, trustees.

*William N. Swift (John C. Thomson* with him) for Jean G. Wadsworth & others.

QUIRICO, J.    In each of these two cases brought in the Probate Court pursuant to G. L. c. 231A, the plaintiffs as trustees under the will of Ruth G. Foster (the donee), seek a declaration that the donee's attempted exercise, by separate provisions of her will, of two powers of appointment granted to her by her late father, William A. Gaston (the donor), was valid. The first case involves a power granted by the donor to the donee by his will, and the second a power granted by the donor to the donee by an indenture of trust. Named as defendants in each of the two cases are the four children of the donee, and the surviving trustees of each of the two trusts.[4]

A judge of the Probate Court reserved and reported each case without decision to the Appeals Court on the pleadings and a statement of agreed facts (G. L. c. 215, § 13), and we then allowed the plaintiffs' application for direct appellate review of both cases. G. L. c. 211A, § 10 (A). We hold that there has been no valid exercise by the donee of the two powers of appointment granted to her by the donor and that the property subject to such powers

---

[4] Three of the donee's children (Wadsworth, Pittore and Howard) filed an answer to each of the complaints. The remaining defendants failed to file answers.

therefore has passed to those persons whom the donor designated to take in default of appointment.

We summarize the pertinent portions of the two statements of agreed facts signed by counsel for the plaintiffs and for the three defendants who filed answers to the complaints. The donor "[a]t all times relevant to this proceeding . . . was an attorney in Boston, Massachusetts, and a senior member of Gaston, Snow, Saltonstall and Hunt, a firm active in many areas of the practice of law, including the drafting of wills and similar instruments and matters relating thereto. In addition to his practice, Mr. Gaston was a businessman (for example, president of Boston Elevated Railway 1897-1901), a banker (president National Shawmut Bank 1907-1918), and a politician."

On June 16, 1915, the donor executed an irrevocable indenture of trust (inter vivos trust) for the benefit of the donee which provided in pertinent part that the trustees thereunder were "[t]o pay the whole of the net income of the Trust Estate in semi-annual payments to the said [donee] during her life . . .; *and upon the decease of said [donee], upon the further trust to pay over the said Trust Estate . . . discharged and free from trust, to and among her children or issue as she may by her last will and testament appoint,* and in default of appointment in equal shares to her children and to the issue of any deceased child by right of representation . . ." (emphasis supplied).

The donor died on July 17, 1927. Under article Seventeenth of his will, which was executed on December 2, 1926, he set up another trust (testamentary trust) for the benefit of the donee, providing in pertinent part as follows: "I give and bequeath to my trustees hereinafter named the sum of Two Hundred and Fifty Thousand (250,000) dollars, but in trust nevertheless, to hold, manage, invest and reinvest the same and to pay the income quarterly or oftener to . . . [the donee] for life, *and upon her death to pay over and convey the principal of the trust property to and among her issue as she may by will appoint,* and in default of appointment to her issue then surviving, in equal shares by right of representation" (emphasis supplied).

The donee died on August 22, 1974, leaving a will dated December 8, 1969. By articles Fifth and Sixth of her will she attempted to exercise the two powers of appointment which had been granted to her by the donor as above described by appointing the trust property in further trust to the trustees of two new trusts created by her will. Both of the two new trusts provide that the net income be paid to her children or the issue of her deceased children. Each of these new trusts is to continue until the happening of a particular event prescribed therein, at which time it is to terminate and the trust property is to be distributed to her children or issue as more particularly prescribed in her will.

The trust property held under the donor's testamentary trust had a value of $3,700,199.55 on September 6, 1974, and that held under the inter vivos trust had a value of $200,895.71 on August 22, 1974, when the donee died.

The issue thus presented for decision by this court in the present cases is whether the two special powers of appointment granted to the donee, one by the donor's inter vivos trust and the other by his testamentary trust, were validly exercised by the provisions of articles Fifth and Sixth of the donee's will purporting to appoint the property in question in further trusts.[5]

The resolution of this issue "is a matter of determining the intention of the donor, for it is he who creates the power and he who can broaden or narrow the manner of its exercise." 5 American Law of Property § 23.48 (A.J. Casner ed. 1952). *Hooper* v. *Hooper,* 203 Mass. 50, 58 (1909). In determining such intention, we regard as particularly significant the language used by the donor viewed in light of the rule of law in effect in these circumstances at the time the powers in question were created. We be-

---

[5] In the plaintiffs' brief the issue is stated as follows: "May a special testamentary power of appointment created by a direction to trustees 'to pay over and convey . . . to and among her [the donee's] issue as she may appoint by will' be exercised in further trust?" In the defendants' brief it is stated as follows: "May a special testamentary power of appointment be exercised in further trust in the absence of language in the creating instrument clearly permitting such exercise?"

lieve that "it is fair to suppose that the [donor] in using the language which appears in the [powers of appointment] had in mind the interpretation of similar words and clauses in cases decided in this Commonwealth." *Proctor* v. *Lacy,* 263 Mass. 1, 8 (1928). *Davis* v. *Hannam,* 369 Mass. 26, 32 (1975). *Cape Cod Bank & Trust Co.* v. *Cape Cod Hosp.,* 3 Mass. App. Ct. 279, 282 (1975).

The very issue now presented to us in these cases was considered and decided by this court in *Hooper* v. *Hooper,* 203 Mass. 50 (1909). That case involved two special powers of appointment, one of which was in language virtually identical in pertinent part to the language used by the donor in these cases in creating the power in the testamentary trust and substantially similar to that used by him in creating the power in the inter vivos trust. The donor in the *Hooper* case gave a power of appointment to her granddaughter which provided that on the death of the granddaughter " '... after ... her arriving at the age of twenty-five years, ... her portion of said trust fund and its accumulations is to be by said Trustee *paid over and conveyed* to such of ... her children, if any, and in such proportions as ... she may, by any instrument in the nature of a will, executed in the presence of two or more witnesses, direct ...' " (emphasis supplied). *Id.* at 53-54. The granddaughter subsequently attempted to exercise that power in her will by appointing the property in question in further trust for the benefit of her children. We held (at 59) that in the circumstances of the *Hooper* case the granddaughter, as the donee of the special power, "is simply to select the persons among the class designated, and is to determine the proportion each one shall take. This language evidently implies a termination of the trust and an absolute estate in the distributees. There is no hint of any other kind of estate, nor any indication of a power in the donee to create new trusts. ... In view of the general nature of the deed, the fact that the power [of appointment] in the donee is limited to stating the proportions in which this property should be paid over and conveyed, we are of opinion that the attempt of the donee to create

equitable life estates was not warranted by the power, and that there has been no valid exercise of the power." Similarly, in the present cases, there is no indication whatsoever from the language used in creating the two special powers that the donor intended to vest in the donee powers to create new trusts or to appoint any kinds of estates other than absolute estates in the beneficiaries.

While the plaintiffs readily acknowledge the obvious similarity of the *Hooper* case to the present cases, they nevertheless urge in effect that we decline to follow the *Hooper* decision and that we adopt instead as the law of the Commonwealth in these circumstances the provisions of the Restatement of Property § 358 (e) (1940), which all parties apparently concede would authorize the donee's appointments in further trust in the present cases. Section 358 provides: "If, but only if, the donor does not manifest a contrary intent, the donee of a special power can effectively ... (e) appoint interests to trustees for the benefit of objects."

We decline to adopt the rule stated in Restatement of Property § 358 (e) (1940) as applicable to the present cases. Rather, we elect to adhere to our decision in the *Hooper* case and thus to give effect to what we presume to have been the intention of the donor in creating the two special powers of appointment in the manner which he did. We are unwilling, in the circumstances of these cases, to attribute to the donor the intention which the plaintiffs would have us presume and which we are not persuaded was possessed by the donor himself when he granted the powers.

The cases decided by this court since our decision in *Hooper* v. *Hooper*, 203 Mass. 50 (1909), and relied on by the plaintiffs in their brief have in no way detracted from the authority of that case, and they do not require a result different from that which we reach in the circumstances of the present cases. In *North Adams Nat'l Bank* v. *Commissioner of Corps. & Taxation*, 268 Mass. 42, 45 (1929), and in *Greenough* v. *Osgood*, 235 Mass. 235, 241 (1920), the language of the special power of appointment at issue

in each case was broader and gave a larger power than in the *Hooper* case, and the latter case therefore was expressly stated to be distinguishable from those cases. The issue in *Welch* v. *Morse,* 323 Mass. 233 (1948), was the validity of the partial exercise of a special power of appointment, and that case therefore is inapposite to the present cases where the exercise of a special power in further trust is at issue.

Moreover, the cases from other jurisdictions are split on the question when the exercise of a special power by an appointment in further trust is valid and they provide little guidance on this point. Some jurisdictions would hold, as we did in *Hooper* v. *Hooper,* 203 Mass. 50 (1909), and as we now hold in the circumstances of the present cases that, where it does not appear that the donor of a special power of appointment intended the donee thereof to exercise such power by an appointment in further trust, any attempt by the donee to do so is invalid. E.g., *Union & New Haven Trust Co.* v. *Taylor,* 133 Conn. 221 (1946); *Myers* v. *Safe Deposit & Trust Co.,* 73 Md. 413 (1891); *In re Kennedy's Will,* 279 N.Y. 255 (1938). Other jurisdictions would appear to apply a rule such as that found in the Restatement of Property § 358 (e) (1940) and uphold appointments in further trust absent a manifestation of contrary intent by the donor. E.g., *Equitable Trust Co.* v. *Foulke,* 28 Del. Ch. 238 (1945); *Phipps* v. *Palm Beach Trust Co.,* 142 Fla. 782 (1940); *In re Estate of Spencer,* 232 N.W.2d 491 (Iowa 1975); *National State Bank* v. *Morrison,* 9 N.J. Super. 552 (Ch. 1950). Here we note once again that in some of the cases cited immediately above the language used in creating the powers of appointment involved was broader and the powers granted larger than in the *Hooper* case or in the present cases, and such cases therefore would appear to be distinguishable from the present cases. For a collection of cases from other jurisdictions on both sides of the issue, and excerpts of the language of the powers involved therein, see *In re Estate of Spencer, supra* at 496-497. See generally on this subject: E.A. McCoyd, Exercising Powers of Appointment by Cre-

ating New Trusts and New Powers, 111 Trusts and Estates 272 (1972).

We have considered the plaintiffs' contention that the rule stated above from *Hooper* v. *Hooper,* 203 Mass. 50, 59 (1909), "was not needed for decision [in that case] and therefore need not be adhered to now," but we are not persuaded by it. We have also considered the plaintiffs' argument about the large tax saving which might result from the decision of these cases on the basis of the rule stated in Restatement of Property § 358 (e) (1940) rather than the rule stated in the *Hooper* case and conclude that in these cases even such a large saving in taxes does not warrant or require us to reach a conclusion contrary to that in the *Hooper* case. We therefore hold, in accord with the *Hooper* decision, that in the circumstances of these cases there has been no valid exercise by the donee of the two special powers of appointment in question.

While for reasons already stated above we have decided these cases on the basis of the rule stated in *Hooper* v. *Hooper,* 203 Mass. 50 (1909), rather than on the basis of the rule of Restatement of Property § 358 (e) (1940), we are not unmindful of the fact that the trend is toward the latter rule. Section 358 (e) is cited in 1 A. Scott, Trusts § 17.2 (3d ed. 1967) as an example of the fact that "[t]here is a tendency to construe with increasing liberality the language of the instrument in which the power is conferred, and to hold that the donee of the power has broad discretion as to the manner in which he shall exercise it in favor of the members of the class, unless it appears that the donor intended to restrict him." In 2 G. Newhall, Settlement of Estates § 365 n.5 (4th ed. 1958, Supp. 1975), the author said: "The Hooper rule is contrary to the rule articulated in Scott, Trusts (3d Ed., Sec. 17.2) and Restatement, Property (Sec. 358). These authorities argue that the presumption should exist that a donor of a special power intended the donee to have wide discretion unless an intent to the contrary appears. Their argument should be persuasive in light of the widespread modern use of trustees of living trusts as appointees. Nonetheless

the Hooper case provides a present potential trap for the unwary Massachusetts estate planner."

If practitioners engaged in the draftsmanship of instruments either granting or exercising powers of appointment could be relied on to heed the cautions of learned scholars, the *Hooper* case might not provide the "present potential trap for the unwary Massachusetts estate planner" to which Mr. Newhall referred in his treatise cited above. In 1950 Professor Casner wrote: "The draftsman should spell out with considerable care the donor's intentions with respect to any exercise of the power of appointment. The more important things to be expressed clearly in this regard are the following: ... 2. *Interests creatable in appointees.* — May the donee of the power appoint the property in trust or on condition or must all appointments be outright?" Casner, Estate Planning — Powers of Appointment, 64 Harv. L. Rev. 185, 200 (1950). In 1952 Professors Callahan and Leach wrote: *"The limits of the power.* It is clear, of course, that the donee of a power of appointment may exercise it only within the limits prescribed by the donor. Stated in another way, the donee *has* no power except that which the donor has given him. Accordingly a proposed exercise must be checked against the instrument creating the power.... If the power is special other questions arise: ... May the donee appoint limited interests, such as life estates, to some or all of the members of the class? May he appoint interests in trust?" 5 American Law of Property § 23.7 (A.J. Casner ed. 1952).

Acknowledging these and other cautions and comments by legal scholars and in various court decisions on the importance of having the language of special powers of appointment specify whether the power is intended to include the power in the donee to appoint in trust, we believe it would be helpful if the law of this Commonwealth corresponded with the provision of the Restatement of Property § 358 (e) (1940) to the effect that "[i]f, but only if, the donor does not manifest a contrary intent, the donee of a special power can effectively ... (e) appoint interests to trustees for the benefit of objects." Accordingly we declare

it to be our present intention to apply that rule of con-
struction to special powers of appointment granted in in-
struments executed by the donors after the date of this
opinion. This proposed change in the law of this Common-
wealth would not thwart or otherwise interfere with the
presumed intention of donors of powers of appointment
contained in instruments executed by them before the date
of this opinion.

The two cases are remanded to the Probate Court for
the entry of a final judgment in each case to the effect that
the special power of appointment involved therein has not
been validly exercised and that therefore after the pay-
ment of the expenses of this proceeding, including reason-
able attorneys' fees, the defendant trustees in each case be
ordered to pay the balance of the trust funds in equal
shares to the four children of the late Ruth (Gaston)
Foster, free from trust.

*So ordered.*

BRAUCHER, J. (dissenting, with whom Kaplan, J., joins).
I fully agree with the court's view that the better rule, to
be applied in the exercise of powers of appointment created
hereafter, is the rule stated in Restatement of Property
§ 358 (e) (1940) that, unless the donor has manifested a
contrary intent, the donee of a special power can effec-
tively appoint interests to trustees for the benefit of ob-
jects of the power. But I also think that rule expresses the
probable intention of the donor with respect to both of
the powers of appointment involved in the present cases,
and that *Hooper* v. *Hooper*, 203 Mass. 50 (1909), is not
to the contrary. I would therefore hold that both powers
were validly exercised.

The present cases involve two powers, created by two
distinct instruments. The 1915 inter vivos trust instrument
directed the trustees, on the death of the donee, "to pay
over" the property, "discharged and free from trust," to
the donee's "children or issue as she may" by will appoint.
The donor's will, which was executed in 1926 and took

effect in 1927, directed the trustees, on the donee's death, "to pay over and convey" the property to "her issue as she may by will appoint." The court supposes that the donor, a member of the bar, may have relied on the decision of this court in the *Hooper* case, since that case involved language "virtually identical" to the language of the 1926 will and "substantially similar" to that used in the 1915 trust. But the language of both the will and the trust is significantly different from the language in the *Hooper* case, and by 1926 the donor was entitled to rely on our statement in *Greenough* v. *Osgood*, 235 Mass. 235, 242 (1920): "It is settled that a power of appointment of a fund in favor of children is well exercised by an appointment to trustees in favor of children . . . ."

The first trust considered in the *Hooper* case was created by a deed providing for payment to "such of" the donee's "children, if any, and in such proportions as" the donee may by will direct. 203 Mass. at 53. The court treated this language as particularly restrictive: "She is simply to select the persons among the class designated, and is to determine the proportion each one shall take." *Id.* at 59. Hence no further trust was indicated. This conclusion was reinforced by contrasting a provision in the same sentence for appointment of an equitable estate to the donee's surviving husband. In the particular case the appointment was in trust for the donee's children and their issue, and the only surviving member of the class was the donee's daughter. Since "the attempt of the donee to create equitable life estates was not warranted by the power," the donee's daughter took the entire estate in default of appointment. *Ibid.*

The second trust considered in the *Hooper* case was created by a will providing for payment to the donee's children "in such manner and in such proportions as" the donee may by will direct. *Id.* at 54. "Here the language creating the power is different from that in the deed," the court said, "and perhaps the scope of the power is to a certain extent less circumscribed as to the quality of the estate which may be created under it." *Id.* at 59. But the result was the same, on the different ground that "there

is no reason why" the donee's daughter, "being the only person interested in the estate, should not receive the whole. There is no reason for the trust." *Id.* at 62.

In my opinion the powers in the present cases are more like the second power considered in the *Hooper* case than the first. In the present cases the property is to be paid to issue "as" the donee may appoint. This is even broader than "in such manner as" she may appoint, since her choice is not limited to "manner." The present powers are far less limited than a power to appoint to "such of her children, if any, and in such proportions as" she may appoint, if the latter formulation is read as limited to choice of persons and proportions.

In the absence of particular restrictions, we have held that a power of appointment in favor of children was well exercised by an appointment to trustees for the children. *Greenough* v. *Osgood,* 235 Mass. 235, 241-242 (1920). In that case we distinguished the *Hooper* case, "wherein the donee of a special power of appointment was held to have a mere power of selection among her children and to determine the proportion each one should take in the principal of a trust fund held by trustees for the life use of the donee." Accord, *North Adams Nat'l Bank* v. *Commissioner of Corps. & Taxation,* 268 Mass. 42, 45 (1929). See *Lovejoy* v. *Bucknam,* 299 Mass. 446, 451-455 (1938), and cases cited. The same principle has been applied to the exercise of a general power. *Slayton* v. *Fitch Home, Inc.,* 293 Mass. 574, 578 (1936). Cf. *Garfield* v. *State St. Trust Co.,* 320 Mass. 646, 654-657 (1947). In such cases it makes no difference that the donor directs his trustees to "convey" the property to the appointees, "discharged of all trusts." See *Cumston* v. *Bartlett,* 149 Mass. 243, 244 (1889). I find no such particular restriction in the present cases as to prevent application of the "settled" rule of *Greenough* v. *Osgood, supra.*