HOWARD B. HILLMAN *vs.* TATNALL L. HILLMAN & others.[1]

Suffolk. February 6, 2001. - March 23, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Trust,* Irrevocable trust, Power of appointment, Interpretation, Taxation. *Words,* "My issue."

This court allowed the reformation of a trust instrument that produced tax results that were clearly inconsistent with the intent of the settlor. [592-595]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 9, 1999.

The case was reported by *Lynch,* J.

*William G. Meserve* for Howard B. Hillman, individually.

*Robert J. Muldoon, Jr.,* for Howard B. Hillman, as trustee.

MARSHALL, C.J. Howard B. Hillman filed a complaint for declaratory relief in the county court, seeking an interpretation of a power of appointment granted to him in a deed of trust executed by his mother in 1970. Specifically, he sought a declaration that the power of appointment does not authorize him to appoint the trust principal to himself, his estate, his creditors, or creditors of his estate. Because of the Federal tax implications, and because it is uncertain whether the Internal Revenue Service would abide by an interpretive decision on a matter of Massachusetts law other than a decision from this court, a single justice reserved and reported the case to the full court. See *Simches* v. *Simches,* 423 Mass. 683, 686 n.8 (1996); *Shawmut Bank, N.A.* v. *Buckley,* 422 Mass. 706, 710 (1996), and cases cited. See also the discussion in *Walker* v. *Walker, ante* 581 (2001).

---

[1]Howard B. Hillman, as trustee under a deed of trust executed by Dora B. Hillman on or about December 31, 1970; Roberta W. Hillman; Dawn A. Hillman; Bonnie D. Hillman; Heather L. Hillman; Kendra J. Hillman; Howard B. Hillman, Jr.; Gregory Green; Elise Hillman Green; and Hartwell Howison Green.

The defendants include ten individuals who are objects of Hillman's power of appointment, i.e., persons he may designate to receive trust principal either during his lifetime or through his will. Nine of these individuals also would become beneficiaries or contingent beneficiaries of the trust if Hillman were to die without exercising his power of appointment. Hillman himself, in his capacity as trustee of the trust, also is named as a defendant in the case.[2]

A guardian ad litem has been appointed to represent minors and unascertained persons who may have an interest in the trust. The guardian ad litem has filed a report indicating that he agrees with Hillman's interpretation concerning the limited scope of his power of appointment. Hillman further represents that the Internal Revenue Service, which is not named as a party, has been furnished with a copy of his complaint; however, the Internal Revenue Service has not sought to intervene or otherwise participate. See *Putnam* v. *Putnam*, 425 Mass. 770, 770-771 (1997). See also *Berman* v. *Sandler*, 379 Mass. 506, 509 n.5 (1980).

1. *Basic trust provisions.* On or about December 31, 1970, Hillman's mother, Dora B. Hillman (settlor), executed a deed of trust that created an irrevocable trust. Hillman is both the primary beneficiary of the trust and its sole trustee.[3] When the trust was created, the trust principal consisted of residential real property in the town of Chilmark. Subsequently other property was added: beach lots adjacent to the Chilmark property; residential properties in the town of Beverly and in Greenwich, Connecticut; and cash and securities.[4]

Under the terms of the trust, Hillman is entitled to use and to occupy the trust properties free of rent, and to receive annually

---

[2]Hillman represents to us that all defendants have been served with process. None of them, other than Hillman himself in his capacity as trustee, has filed a responsive pleading or otherwise indicated any view as to the relief sought. As trustee, Hillman (through separate counsel) has filed an answer admitting the complaint's allegations and assenting to the relief sought.

[3]The deed of trust contains provisions for the appointment of successor trustees and cotrustees. Hillman has served as the sole trustee since the trust's inception.

[4]The deed of trust states that the trust shall be governed by Massachusetts law.

any net income derived from the principal.[5] On his death, the properties may be used and occupied for the duration of the trust by his spouse, his issue, and his issue's spouses on terms and conditions prescribed in the deed of trust, and any net income is to be paid to the settlor's then living issue. The trust will terminate, at the latest, twenty-one years after the death of the last to survive from the group consisting of Hillman, his brother Tatnall L. Hillman, their spouses at the time the trust was created, and their children who were alive when the trust was created, and at that point the remaining principal is to be distributed to Hillman's then living issue. If all trust beneficiaries were to die before the scheduled termination of the trust, the trust will then terminate immediately, and the remaining principal is to be distributed to the settlor's living issue.

No discretion is given to any trustee under the deed of trust to make distributions of principal to any beneficiary of the trust while the trust remains in effect.[6] However, paragraph G of Section First of the trust grants to Hillman, as trust beneficiary, the power to direct a trustee to distribute principal as follows:

> "Anything hereinbefore contained to the contrary notwithstanding, Trustees shall pay or distribute such amounts or proportions of the remaining principal (including the Properties) of the trust during the lifetime of my said son, Howard B. Hillman, to or in trust for such of the following (whether then living or thereafter born) — my said son's spouse, his issue, *my issue*, or the spouses of any of his issue or of any of my issue — on such terms and in such amounts and proportions as my said son may from time to time appoint by written instrument, duly executed, notarized and delivered to Trustees, or, following his death, as he may have appointed by Will containing specific reference to this power of appointment" (emphasis added).

2. *Discussion.* The difficulty for Hillman lies in the settlor's reference to "my issue" in the power of appointment. Read

---

[5]Different provisions for the use of the properties and distribution of the income would apply if Hillman were under a disability as defined in the deed of trust.

[6]The sole basis permitted under the terms of the trust for the trustee to invade the principal is to make major improvements to the trust properties.

literally and in isolation, this language would permit Hillman to appoint trust principal to himself, for he is among the settlor's issue. However, the adverse tax consequences that might flow from such an interpretation could be considerable.[7] If Hillman were authorized by the power of appointment to appoint trust principal to himself, the entire principal of the trust would be includible in his estate at the time of his death and be subject to Federal estate tax, regardless of whether he exercises the power; moreover, during Hillman's lifetime, any capital gains realized on a sale of trust assets might be treated as Hillman's for Federal income tax purposes. See I.R.C. § 678 (a), § 2041 (a) (2), and § 2041 (b). See generally G. Bogert, Trusts and Trustees § 273.35 (2d ed. rev. 1992). See also J.F. Farr & J.W. Wright, Jr., Estate Planner's Handbook § 42, at 261-263 (4th ed. 1979) (discussing potential Federal gift tax consequences associated with powers of appointment).

When interpreting trust language, however, we do not read words in isolation and out of context. Rather we strive to discern the settlor's intent from the trust instrument as a whole and from the circumstances known to the settlor at the time the instrument was executed. *Pond* v. *Pond*, 424 Mass. 894, 897 (1997). *Berman* v. *Sandler*, 379 Mass. 506, 510 (1980). *Putnam* v. *Putnam*, 366 Mass. 261, 266 (1974). If, read in the context of the entire document, a given word or phrase is ambiguous, we may accept and consider extrinsic evidence showing the circumstances known to the settlor when he or she executed the document. *Berman* v. *Sandler, supra. Putnam* v. *Putnam, supra* at 266-267.[8] We tend to disfavor interpretations that would resolve ambiguities "by attributing to the [settlor] an intention which as a practical matter is likely to benefit the taxing authorities and no one else." *Id.* at 271.

Viewing the deed of trust in this case as a whole, and giving due weight to all its language, we agree with Hillman that the settlor did not intend the words "my issue" in the power of ap-

---

[7]The record in this case does not indicate the values of the properties or other assets in the trust, or the amounts of current or projected future tax savings that Hillman hopes to achieve. See *Walker* v. *Walker, ante* 582 n.5 & 583 n.6 (2001).

[8]The record in this case contains no such extrinsic evidence.

pointment to include Hillman.[9] We arrive at this conclusion for at least three reasons, which we shall outline.

First, as can readily be seen from the language creating the power of appointment, quoted above, the settlor not only referred to Hillman once by name, but also referred to him two additional times as "my said son." She further expressly referred to his spouse as "my said son's spouse," and to his issue as "his issue." If she had meant to authorize Hillman to appoint trust principal to himself under this power, we think it is most likely that she would have been consistent and employed the same convention, i.e., she would have referred to him either by name or as "my said son," to identify him along with the others as one of the objects of the power. We think it is highly improbable that, in the same paragraph in which she so clearly and specifically referred to Hillman by name and as "my said son," she would have intended to include him as one of the objects of the power solely by including him in the general, nonspecific phrase "my issue."

Second, if we were to construe the words "my issue" in the power of appointment to include Hillman, then the language identifying other persons who are objects of the power would become redundant and confusing. There would have been no need, for example, for the settlor specifically to have identified "my said son's spouse" (referring to Hillman's spouse at the time the deed of trust was executed) as one of the objects of the power of appointment, since Hillman's spouse also would have been included in the phrase "the spouses of any of . . . my issue." Likewise there would have been no need for the settlor to have referred separately to "his issue," referring to Hillman's issue, and "my issue," referring to the settlor's issue, since her issue necessarily would have included his issue. The only fair reading of the power is that the settlor intended the words "my issue" to refer only to her issue *other than Hillman and his issue.*

---

[9]We note that the settlor also used the words "my issue" (or words to the same effect, such as "my then living issue" and "issue of mine") in other parts of the deed of trust. We express no view on how these words should be construed in any context other than the power of appointment. Nothing in the other usages detracts from our conclusion as to the meaning of the words within the power of appointment.

Third, as Hillman and the guardian ad litem point out, reading the power of appointment as a general power, one which permits Hillman to appoint principal to himself, would appear to be inconsistent with other provisions in the deed of trust that place restraints on Hillman's access to trust principal. For example, paragraph A.7 of Section First states that, during Hillman's lifetime, "[m]y said son or any of his issue designated by him may purchase all or any part of the Properties at fair market value determined by appraisal, even though he may then be serving as a Trustee hereunder." This provision would have little meaning if Hillman simply could appoint one or more of the properties to himself. Similarly, in Section Third, the deed of trust provides that "[t]he principal . . . and the income therefrom so long as the same are held by Trustees shall be free from the control, debts, liabilities and assignments of any beneficiary interested therein and shall not be subject to execution or process for the enforcement of judgments or claims of any sort against any beneficiary." This basic spendthrift provision clearly was intended to restrict Hillman's access to the trust principal, yet there would be no restriction whatsoever if his power of appointment were interpreted to be a general power.

3. *Conclusion.* We agree with Hillman that, when the deed of trust is properly interpreted under Massachusetts law, the words "my issue" appearing in paragraph G of Section First were not intended by the settlor to include Hillman or his estate.[10] The case is remanded to the county court where a judgment shall be entered to that effect.

*So ordered.*

---

[10]Hillman assures us that this is "all that is absolutely essential" in order to effectuate the settlor's intent and avoid the adverse tax consequences. We therefore need not address his additional request, which he says he makes "in an abundance of caution," for a declaration that the power of appointment also precludes him from making an appointment to his creditors or creditors of his estate. We decide the case only to the extent necessary; as Hillman states in his brief, the trust's spendthrift provision will take care of the rest.