RICHARD MORSE, trustee,[1] *vs.* JONATHAN A. KRAFT & others.[2]

Suffolk. April 1, 2013. - July 29, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Trust,* Irrevocable trust, Distribution. *Minor,* Guardian ad litem.

This court concluded that the sole and disinterested trustee of an irrevocable trust could distribute the trust property in further trust for the benefit of the beneficiaries without their consent or approval, and without the consent or approval of a court, where the trust's broad grant of almost unlimited discretion evidenced the settlor's intent that the disinterested trustee have the authority to do so [95-99]; further, there was no need to appoint a guardian ad litem in the matter [100].

This court declined to recognize an inherent power of trustees of irrevocable trusts to exercise their distribution authority by distributing trust property in further trust, irrespective of the language of the trust. [99-100]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 23, 2012.

The case was reported by *Cordy,* J.

*Daniel L. Goldberg (Charles L. Solomont* with him) for the plaintiff.

*Andrew D. Rothstein,* for Boston Bar Association, amicus curiae, submitted a brief.

SPINA, J. Richard Morse, the trustee of The Kraft Irrevocable Family Trust (1982 Trust), commenced this action before a single justice of this court pursuant to G. L. c. 231A, § 1, and G. L. c. 215, § 6, and the single justice reserved and reported the case to the full court.[3] See *Hillman* v. *Hillman,* 433 Mass. 590, 590 (2001), and cases cited; *Walker* v. *Walker,* 433 Mass. 581, 581-582 (2001), and cases cited. "We have regularly recognized the appropriateness of granting declaratory relief to fidu-

---

[1]Of the trusts under Article III of The Kraft Irrevocable Family Trust.

[2]Daniel A. Kraft, Joshua M. Kraft, David H. Kraft, Harry J. Kraft, Sadie H. Kraft, Jacob C. Kraft, Jessica R. Kraft, Alison F. Kraft, Joseph S. Kraft, Rebecca H. Kraft, Anna R. Kraft, Patricia L. Kraft, Wendy Kraft, Carolyn U. Kraft, and the Commissioner of Internal Revenue.

[3]We acknowledge the amicus brief of the Boston Bar Association.

ciaries seeking instructions concerning the manner in which an instrument . . . should be construed in connection with the possible application of Federal estate tax provisions." *First Agric. Bank* v. *Coxe*, 406 Mass. 879, 882 (1990). See *Walker* v. *Walker*, *supra* at 582 & n.5, 583. All of the parties have stipulated to the relevant facts, and each of the defendants, with the exception of the Commissioner of Internal Revenue,[4] has assented to the relief sought.

1. *Background.* By declaration of trust dated January 4, 1982, the 1982 Trust was established, and each of four separate subtrusts were created therein, for the benefit of the four sons of Robert and Myra Kraft (the Krafts).[5] Each of the four sons is an income beneficiary of his subtrust, and also is a potential object of the powers of appointment held by each son as the income beneficiary of his respective subtrust. The sons' children (the Krafts' grandchildren) are the contingent remainder beneficiaries of the subtrusts, and also are the potential objects of the sons' powers of appointment. The 1982 Trust permits only "Disinterested Trustee[s]" — defined in the 1982 Trust as "all those trustees who are not transferors of property to [the] trust and who are not eligible, and who are not legally obligated to support any person who is eligible, to receive current distributions of income or principal from any trust" — to participate in decisions regarding the making of distributions from the subtrusts. Thus, under the 1982 Trust, the sons cannot serve as disinterested trustees because they are "eligible to receive current distributions" from their respective subtrusts. The 1982 Trust was drafted to preclude the sons from serving as disinterested trustees because, at the time of its creation, the sons were minors and it was impossible to know whether they would develop the skills and judgment necessary to make distribution decisions concerning their respective subtrusts.

Since the creation of the 1982 Trust, the plaintiff has served as the sole and disinterested trustee of the 1982 Trust and the

[4]As is common, the Commissioner of Internal Revenue has elected not to participate in this proceeding. See *Hillman* v. *Hillman*, 433 Mass. 590, 591 (2001); *Walker* v. *Walker*, 433 Mass. 581, 581-582 (2001).

[5]Myra Kraft died in July, 2011; therefore, all children of the Krafts' marriage are now in being.

four separate subtrusts. The plaintiff is now eighty-one years old, and is nearing retirement. He proposes to transfer all of the property of the subtrusts into *new* subtrusts, established in accordance with the terms of a new master trust (2012 Trust), for the benefit of each of the Kraft sons. Although we express no opinion on the form of the 2012 Trust or the subtrusts created therein, we note that the beneficiaries of the original subtrusts pursuant to the 1982 Trust (the Kraft sons and their children) are the beneficiaries of the new subtrusts pursuant to the 2012 Trust. See *Phipps* v. *Palm Beach Trust Co.*, 142 Fla. 782, 783-784, 786-787 (1940) (*Phipps*) (beneficiaries of second trust limited to class of beneficiaries under original trust). We also are aware that the 2012 Trust is unlike the 1982 Trust in that the sons can serve as trustees with distributive powers over their respective subtrusts. The plaintiff believes the transfer of assets to the new subtrusts to be in the best interests of the 1982 Trust beneficiaries from *a management perspective*: each of the Kraft sons is now in his forties, and is well qualified to manage the assets in his subtrust and to appreciate the needs of the income and remainder beneficiaries.[6] The plaintiff contends, however, that the transfer will only be in the beneficiaries' best interests from *a financial perspective* if the transfer will not cause the property or distributions therefrom to be subject to the generation skipping transfer tax (GST).[7] Whether the transfer of the assets from the old subtrusts (established in the 1982 Trust)

[6]We pass no judgment on whether transfer of assets to the new subtrusts is, in fact, in the beneficiaries' best interests or in keeping with the plaintiff's fiduciary duties. We only consider the question whether the 1982 Trust authorizes such a transfer.

[7]The plaintiff submits that the 1982 Trust is exempt from the generation skipping transfer tax (GST) in part because assets were contributed to the trust before September 25, 1985, and therefore are "grandfathered," and in part because the donors allocated their individual GST exemptions to the 1982 Trust. He further states that the reason a trust is exempt from the GST — whether because of grandfathering or because of allocations of individual GST exemption — has no bearing on whether a distribution from the trust to another trust triggers GST. The analysis, according to the plaintiff, remains whether the terms of the 1982 Trust authorize him to make distributions in further trust without the consent or approval of any beneficiary or court. See 26 C.F.R. § 26.2601-1(b)(4)(i)(A)(1)(i) (2012). For further discussion of the potential GST consequences of transferring assets from one trust to another, see Culp, Trust Decanting: An Overview and Introduction to Creative Planning Opportunities, 45 Real Prop. Tr. & Est. L.J. 1, 16-26 (2010); and Zeydel,

to the new subtrusts (established in the 2012 Trust) triggers the GST depends, in relevant part, on whether "[t]he terms of [the 1982 Trust] authorize distributions to the new trust . . . without the consent or approval of any beneficiary or court." See 26 C.F.R. § 26.2601-1(b)(4)(i)(A)(1)(i) (2012). Thus, the plaintiff asks us to interpret the 1982 Trust to determine whether it authorizes such distributions. We conclude that it does.

2. *Discussion.* "Decanting is the term generally used to describe the distribution of [irrevocable] trust property to another trust pursuant to the trustee's discretionary authority to make distributions to, or for the benefit of, one or more beneficiaries [of the original trust]. Potentially, common law provides authority for decanting, but a [S]tate statute or the terms of the trust instrument may expressly authorize a trustee to decant trust property to another trust. Trustees may decant to achieve a variety of favorable tax or nontax results or to address changes in [S]tate law or in other circumstances affecting management or administration of the trust after it has become irrevocable." Culp, Trust Decanting: An Overview and Introduction to Creative Planning Opportunities, 45 Real Prop. Tr. & Est. L.J. 1, 2-3 (2010) (Culp). See Zeydel, Tax Effects of Decanting — Obtaining and Preserving the Benefits, 111 J. Tax'n 288, 288-289 (2009) (Zeydel). In effect, a trustee with decanting power has the authority to amend an unamendable trust, in the sense that he or she may distribute the trust property to a second trust with terms that differ from those of the original trust. See Culp, *supra* at 2; Zeydel, *supra*. A trustee can only exercise a decanting power, however, in keeping with fiduciary obligations. See Culp, *supra* at 6-7; Restatement (Third) of Property: Wills and Other Donative Transfers § 17.1 comment g, at 205 (2011) (Restatement [Third] of Property).

A trustee's decanting power was first recognized in *Phipps*, *supra* at 784, 786, where the court determined that the terms of the trust — which authorized the trustee, "in his or her sole and

Tax Effects of Decanting — Obtaining and Preserving the Benefits, 111 J. Tax'n 288, 291-292, 297-299 (2009). The plaintiff further states that, once the transfer is effectuated, the assets in each new subtrust will not be included in the sons' taxable estates because, under the terms of the 2012 Trust, the sons' distributions to themselves are limited by an ascertainable standard relating to health, education, support, or maintenance.

absolute discretion," *id.* at 784, to distribute the trust property
to one or more trust beneficiaries — authorized the trustee to
create a second trust for beneficiaries of the original trust.
Because the terms of the trust vested the trustee "with unlimited
discretion as to time, amount, manner, and condition any sums
should be paid," the court applied what it termed "[t]he general
rule [of trust construction] . . . that the power vested in a
trustee to [make distributions] in fee includes the power to cre-
ate or appoint [trust property in] less than a fee unless the donor
clearly indicates a contrary intent." *Id.* at 786. See *In re Estate
of Spencer*, 232 N.W.2d 491, 495, 498 (Iowa 1975). Similarly,
in *Wiedenmayer* v. *Johnson*, 106 N.J. Super. 161, 164-165 (App.
Div.), aff'd sub nom. *Wiedenmayer* v. *Villanueva*, 55 N.J. 81
(1969) (*Wiedenmayer*), the court found the trustee's authority to
transfer property in further trust in the broad discretion afforded
the trustee under the trust agreement, which gave him "absolute
and uncontrolled discretion" to distribute the trust property for
the beneficiary's "best interests." As in *Phipps, supra,* the court
in *Wiedenmayer, supra,* reasoned that, where a trustee has the
power to make an outright distribution to a beneficiary (limited
only by the beneficiary's "best interests"), the trustee has the
power to distribute assets in further trust for the beneficiary's
benefit. See Culp, *supra* at 4-13. Although Massachusetts courts
have never addressed a *trustee's* (fiduciary's) authority to dis-
tribute trust assets in further trust, we prospectively adopted a
rule permitting *donees* of a (nonfiduciary) special power of ap-
pointment to distribute trust assets in further trust in *Loring* v.
*Karri-Davies*, 371 Mass. 346, 354-355 (1976) (*Loring*). There,
we held that a donee of a special power of appointment may
distribute assets in further trust on behalf of the objects of the
special power, provided the donor manifest no intent to the
contrary.[8] *Id.* See Restatement (Third) of Property, *supra*

---

[8]The Legislature subsequently codified this principle at G. L. c. 190B,
§ 2-608 (*b*), which states: "Unless a contrary intent is manifested in the terms
of an instrument creating or limiting a power of appointment, it shall be
presumed that the person so creating or limiting such power intended to
authorize the donee thereof, when exercising said power, not only to create
absolute interests but also to create less than absolute legal and equitable
interests, including interests in trust for the benefit of objects of said power."
See A.W. Scott, W.F. Fratcher, & M.L. Ascher, Scott and Ascher on Trusts
§ 3.1.2, at 145-146 (5th ed. 2006).

(fiduciary distributive power may be subject to same general rules as special power of appointment).

Although we look to precedent for interpretative guidance, it is nevertheless clear that a trustee's decanting authority "turn[s] on the facts of the particular case and the terms of the instrument creating the trust. There is no fixed rule by which all are determined." *Phipps, supra* at 785. See *In re Estate of Spencer, supra* at 497. Thus, we turn to the language of the 1982 Trust. In relevant part, the 1982 Trust states:

> "Article III.B. The Trustees shall pay to [the] child [for whose benefit a subtrust is held] from time to time such portion or portions of the net income and principal thereof as the Disinterested Trustee shall deem desirable *for the benefit* of such child. . . .

> "Article VI.A. Whenever provision is made hereunder for payment of principal or income to a beneficiary, the same may instead be *applied for his or her benefit.* . . .

> "Article VII. The Trustees shall have *full power* to take any steps and do any acts which they may deem necessary or proper in connection with the due care, management and disposition of the property and income of the trusts hereunder . . . *in their discretion, without order or license of court.*" (Emphases added.)

Although acknowledging that the 1982 Trust does not state that he may distribute property to new trusts for the benefit of the 1982 Trust beneficiaries expressly, the plaintiff nevertheless contends that his authority to distribute the property in further trust is inherent in the broad language of the trust. Relying on *Phipps, supra,* and *Wiedenmayer, supra,* he reasons that, because the trust gives him unlimited discretion to make an outright distribution to and for the benefit of the beneficiaries, so too does it authorize a distribution in further trust if doing so would serve the beneficiaries' best interests. Moreover, settlor Robert Kraft, principal draftsman Gordon Ehrlich, and the plaintiff disinterested trustee all submitted affidavits to the effect that they intended the 1982 Trust to allow distributions to new trusts without the consent or approval of any beneficiary or court.

In interpreting a trust, the intent of the settlor is paramount. See *Hillman* v. *Hillman*, 433 Mass. 590, 593 (2001); *Walker* v. *Walker*, 433 Mass. 581, 587 (2001). "In determining such intention, we regard as particularly significant the language used by the donor viewed in light of the rule of law in effect in these circumstances at the time the powers in question were created." *Loring, supra* at 349. See *Walker* v. *Walker, supra.* "We believe that 'it is fair to suppose that the [donor] in using the language which appears in the [trust] had in mind the interpretation of similar words and clauses.' " *Loring, supra* at 349-350, quoting *Proctor* v. *Lacy*, 263 Mass. 1, 8 (1928). "We tend to disfavor interpretations that would resolve ambiguities 'by attributing to the [settlor] an intention which as a practical matter is likely to benefit the taxing authorities and no one else.' " *Hillman* v. *Hillman, supra,* quoting *Putnam* v. *Putnam*, 366 Mass. 261, 271 (1974). See *First Agric. Bank* v. *Coxe*, 406 Mass. 879, 883 (1990).

We conclude that the terms of the 1982 Trust authorize the plaintiff to transfer property in the subtrusts to new subtrusts without the consent of the beneficiaries or a court. As did the trust in *Wiedenmayer, supra,*[9] arts. III and VI give the disinterested trustee discretion to distribute property directly to, or applied for the benefit of, the trust beneficiaries, limited only in that such distributions must be "for the benefit of" such beneficiaries. We regard this broad grant of almost unlimited discretion as evidence of the settlor's intent that the disinterested trustee have the authority to distribute assets in further trust for the beneficiaries' benefit. Such interpretation is in keeping with the reading of similar trust language in *Phipps, supra*, and *Wiedenmayer, supra*, and our comparable holding in *Loring, supra*, all of which preceded the drafting of the 1982 Trust. Indeed, the principal draftsman of the 1982 Trust stated in his

[9]The adjectives that described the trustee's discretion to distribute trust property in *Phipps* v. *Palm Beach Trust Co.*, 142 Fla. 782, 784 (1940), and *Wiedenmayer* v. *Johnson*, 106 N.J. Super. 161, 164-165 (App. Div.), aff'd sub nom. *Wiedenmayer* v. *Villanueva*, 55 N.J. 81 (1969) — respectively, "sole and absolute" and "absolute and uncontrolled discretion" — do not indicate substantively greater discretion than that afforded to the plaintiff under the 1982 Trust. See Restatement (Third) of Trusts § 87, at 254 (2007) ("difference between extended and simple discretion is one of degree more than of kind").

affidavit that he intended the broad distribution authority to allow the disinterested trustee to distribute the income and principal of the 1982 Trust to another trust for the benefit of the beneficiaries. See *Walker* v. *Walker, supra* at 587-588 (evidence of intent from draftsman); Zeydel, *supra* at 289. Moreover, here, we have affirmative evidence of the settlor's intent that the terms of the 1982 Trust give the plaintiff decanting power in the form of affidavits from the settlor, draftsman, and trustee. See Restatement (Third) of Property: Wills and Other Donative Transfers § 10.2 comment g, at 285 (2003) (postexecution indications of donor intent). What is more, art. VII makes express that the trustee may exercise his "full power" and "discretion," "without order or license of court," and as we stated previously, the 1982 Trust expressly excludes beneficiaries from participation in distribution decisions. For these reasons, the terms of the 1982 Trust authorize distributions to the new trust for the benefit of the 1982 trust beneficiaries without the approval of any beneficiary or court. See 26 C.F.R. § 26.2601-1(b)(4)(i)(A)(1)(i) (2012). See also *Walker* v. *Walker, supra* at 588.

Although we recognize a trustee's decanting power given the trust language and the circumstances here, we nevertheless recognize the trend toward State Legislatures enacting decanting statutes. See Culp, *supra* at 3; Zeydel, *supra* at 289-290. New York passed the first decanting legislation in the early 1990s, and approximately ten States have since followed New York's lead. Culp, *supra*; Zeydel, *supra* at 289-290 & n.12. Indeed, "it may be preferable for the [L]egislature of a [S]tate to adopt a decanting statute rather than rely on general principles of property law." Zeydel, *supra* at 289-290. For this reason, we decline to adopt the request of the Boston Bar Association, in its amicus brief, that we recognize an inherent power of trustees of irrevocable trusts to exercise their distribution authority by distributing trust property in further trust, irrespective of the language of the trust. In the absence of express authorizing legislation, cf. G. L. c. 203E, § 815, inserted by St. 2012, c. 140, § 56, practitioners are including express decanting provisions in standard trust agreements with increasing frequency. Zeydel, *supra* at 290. The 2012 Trust, for example, twice states expressly that the trustee has decanting power. In light of the

increased awareness, and indeed practice, of decanting, we expect that settlors in the future who wish to give trustees a decanting power will do so expressly. We will then consider whether the failure to expressly grant this power suggests an intent to preclude decanting.

3. *Guardian ad litem.* The parties who have entered appearances in this action filed a joint motion to waive the appointment of a guardian ad litem to represent the interests of the minor contingent remainder beneficiaries of the 1982 Trust, as well as the unborn and unascertained beneficiaries. The settlor assented, and we grant the motion for waiver of appointment of a guardian ad litem. Although appointment of a guardian ad litem is typically the preferred practice, see *Fiduciary Trust Co.* v. *Gow*, 440 Mass. 1037, 1038 n.7 (2004), it is unnecessary here, where the only issue is whether the 1982 Trust authorizes the trustee to distribute assets in further trust and the interests of the beneficiaries under the new subtrusts are the same as under the current subtrusts. See *Van Riper* v. *Van Riper*, 445 Mass. 1007, 1008 n.3 (2005); *Reynolds* v. *Reynolds*, 443 Mass. 1001, 1001 n.5 (2004). Cf. *Wiedenmayer, supra* at 167 (Conford, J., dissenting in part) (new trust eliminated eligible contingent remaindermen). All of the adult beneficiaries, each of the Kraft sons (fathers of the minor beneficiaries), assented to the relief sought. As we perceive there to be no potential conflict of interest between parent and child on these facts, each minor beneficiary in this proceeding can be represented by his or her father. See G. L. c. 190B, § 1-403 (2) (ii); G. L. c. 203E, § 303 (6), inserted by St. 2012, c. 140, § 56 (parent may represent minor or unborn child). By extension, the fathers also can represent the interests of the unborn and unascertained beneficiaries, as the interests of such beneficiaries are substantially similar to those of the minor beneficiaries, and there is no conflict of interest between the Kraft sons and any unborn or unascertained children. See G. L. c. 190B, § 1-403 (2) (iii); G. L. c. 203E, §§ 303, 304, inserted by St. 2012, c. 140, § 56. Therefore, there is no need to appoint a guardian ad litem.

4. *Conclusion.* For the reasons stated above, we conclude that the terms of the 1982 Trust authorize the plaintiff to distribute the

Morse *v*. Kraft.

trust property in further trust for the benefit of the beneficiaries of the 1982 Trust without their consent or court approval.

*So ordered.*