CHARLES F. LOVEJOY *vs.* CHARLES C. BUCKNAM, trustee.

SAME *vs.* MABEL L. BERRY & others.

SAME *vs.* SAME.

Essex.    December 6, 7, 1937. — February 11, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, QUA, & COX, JJ.

*Trust,* Identity of trustee, Trust created by donee of power, Appointment of trustee. *Probate Court,* Petition for instructions, Appeal. *Devise and Legacy,* Power. *Power.*

One named as trustee under a will, but not yet appointed, was not a person aggrieved by, and consequently was not entitled to appeal from, decrees of the probate court dismissing petitions that the trust funds be turned over to him if and when he was appointed, and for instructions as to the trustee's duty.

The question, whether a trust created by the donee of a power of appointment should be administered by the trustee under the will of the donor or by a trustee named by the will of the donee for that

sole purpose, properly was raised on a petition for the appointment as trustee of the person named in the donee's will as such, and was presented to this court by his appeal from a decree dismissing the petition.

The trustee under the will of the donor of a power of appointment of a portion of the trust fund, and not another named as trustee of that portion in the will of the donee exercising the power, was the proper person to administer the trust where such appeared to be the intention of the donor if a new trust should be created by the exercise of the power, and a more convenient administration would thus result.

THREE PETITIONS, filed in the Probate Court for the county of Essex on April 28, 1937, by one named as trustee under the will of Henry N. Berry.

The petitions were heard together by *Dow*, J., and decrees were entered dismissing them. The petitioner appealed.

*C. F. Lovejoy, pro se.*

*R. G. Dodge, (T. Chase* with him,) for the respondents.

Cox, J.   Charles H. Newhall died in 1908, leaving a will which, as affected by a compromise agreement, was admitted to probate. *Hastings* v. *Nesmith*, 188 Mass. 190, 194. *Ellis* v. *Hunt*, 228 Mass. 39. By its terms the residue of his estate was given to trustees "to hold . . . until the death of the last survivor of . . . my sister, Sarah C. Berry, and her sons, Henry N. Berry and Benjamin H. Berry," with provisions for payment of the net income, "during the continuance of the trust," to the sister and sons, "the issue of either [son] that may die before the termination of the trust to take the parent's share of income by right of representation, except as hereinafter provided . . . ."   Sarah C. Berry died July 3, 1913, Henry N. Berry died June 4, 1927, leaving a widow, Mabel L. Berry, who is still living, and four children, and Benjamin H. Berry died April 7, 1934, leaving no children.   The residuary clause of the will provided further: "I direct that said Henry N. Berry and Benjamin H. Berry may each by a last will direct and appoint that a portion of the income of the entire trust estate then remaining, not exceeding one-sixth thereof by each shall be payable to his present wife if she survives him, during the continuance of the trust if she so long lives, the same to be deducted from the amount otherwise payable to his issue, if he leaves issue

him surviving, and said Henry N. Berry and Benjamin H. Berry may each further direct and appoint by a last will that at the termination of the trust a portion of the principal in each case not exceeding one-sixth thereof, may be held in trust, the income to be paid to his present wife on such terms as he may direct and on her decease, the principal to be paid to his issue, if he leaves issue then surviving, taking by right of representation, and if he leaves no issue then surviving, the principal to be paid the issue of his brother then surviving taking by right of representation, and in case of there being no issue of either said Henry N. Berry or Benjamin H. Berry then surviving, the principal to be paid to the three charitable institutions hereinafter named as residuary legatees in case there be no issue living of said Henry N. Berry and Benjamin H. Berry at the termination of the trust." The last words of this sentence, "in case there be no issue living of said Henry N. Berry and Benjamin H. Berry at the termination of the trust," clearly are intended to refer to similar words in a later paragraph, which is quoted hereinafter, and which provides for a possible division of the residue between the Lynn Hospital, Public Library and Home for Aged Women. It is not a direction as to the time when the trust shall terminate. The residuary clause further provided: "And at the death of the last survivor of said Sarah C. Berry, Henry N. Berry and Benjamin H. Berry, I direct that the trust shall terminate and that the principal, except as herein otherwise provided, shall be paid over to the children then surviving of said Henry N. Berry and Benjamin H. Berry taking in equal shares per capita, the issue of any deceased child to take the parent's share by right of representation. In case there be no issue of said Henry N. Berry and Benjamin H. Berry living at the termination of the trust, as hereinbefore provided, I direct that the principal of the trust estate shall then be divided equally between the Lynn Hospital, the Lynn Public Library and the Lynn Home for Aged Women, except as hereinbefore provided."

The quoted powers of appointment did not appear in the original will. Three annuities were provided for, with a

direction that the trustees should pay them out of the income of the residue. The will contained the following bequests, among others: to the Lynn Hospital $50,000 in memory of the testator's father and mother; to the Lynn Public Library $5,000 in memory of his father; to the Lynn Home for Aged Women $20,000 and the "Barnard estate" in memory of his wife. The surviving trustee under the Newhall will now holds certain securities which are taken as representing one sixth of the principal of the trust, and of these securities the trustee has set apart what he considers as sufficient to provide for the required payment to the one annuitant who is still living. In addition he holds some unliquidated securities, one sixth of which belongs to the Henry N. Berry trust hereinafter described. The remaining five sixths of these unliquidated securities are considered by the trustee as belonging to the children of Henry N. Berry.

Henry N. Berry's will, which was allowed on June 28, 1927, contained this provision: "I further direct and appoint under the power given to me by the will, as allowed, of my uncle Charles H. Newhall, that the income of one-sixth of the estate held in trust under said will of Charles H. Newhall be paid to my wife, Mabel L. Berry, during her life; and if said trust under said will of Charles H. Newhall shall terminate during the life of my said wife, I further direct and appoint under the power given me by said will that one-sixth of the principal of said trust shall be paid over to Charles F. Lovejoy [the petitioner] of Swampscott, in the County of Essex and Commonwealth of Massachusetts, to hold in trust for my said wife during the term of her life and on her death to pay over the principal of said trust to my issue then surviving, taking by right of representation."

There are three petitions before us. In the first, the petitioner, Lovejoy, asks that the trustee of the Charles H. Newhall will turn over to him, when he has duly qualified as trustee under the will of Henry N. Berry, one sixth of the residuary estate of Charles H. Newhall to be held by him upon the trust declared in the will of Henry N. Berry. In the second, he asks that, if it shall be decided that the trust for the benefit of Mabel L. Berry is to be administered under

the will of Charles H. Newhall, he (Lovejoy) be appointed trustee in that estate for the purpose of administering the trust for the benefit of Mabel L. Berry. In the third, he asks that he be appointed trustee under the will of Henry N. Berry. After hearing, the judge of probate ordered all of the petitions dismissed, and the petitioner appealed.

The respondents contend that the petitioner is not a person aggrieved by any of the decrees within the meaning of G. L. (Ter. Ed.) c. 215, § 9, and therefore is not entitled to appeal therefrom. This court has no jurisdiction to consider an appeal from a decree of the Probate Court unless it is taken by a person aggrieved by the decree. *Finer* v. *Steuer*, 255 Mass. 611, 617. It is difficult to see how a person named as a trustee in a will, but who has not qualified, can bring a petition in which he seeks to have the trustee of another estate turn over to him assets to which, he contends, he would be entitled if and when he should qualify. In the case of *Ripley* v. *Brown*, 218 Mass. 33, trustees were brought in by certain heirs in their attempt to void the trust and the trustees were held to have a right of an appeal from a decree which was in favor of the plaintiffs, but, as was pointed out in *Dockray* v. *O'Leary*, 286 Mass. 589, 592, the trustees in *Ripley* v. *Brown*, 218 Mass. 33, were defendants and an attack was made on their office and also on the validity of a charitable trust. There is some ground for treating the second petition which is before us as one for instructions. If this is so, then as was said in *Hull* v. *Adams*, 286 Mass. 329, 331: "A trustee has no right to maintain a suit in equity for instructions concerning a trust fund which has not come into his possession. He must wait until he has a present duty to perform with respect to property in his hands before he can come into court for instructions respecting it." See *Hill* v. *Moors*, 224 Mass. 163.

In the third petition, the prayer is that Lovejoy, who is named as trustee in the Berry will, be appointed as such trustee. At the hearing in the Probate Court, counsel for the respondents stated that the one question was, "Is this trust created by the Newhall will or made possible by the provisions of the Newhall will, to be administered under

that will, or is it to be taken away from the trustee under that will and turned over to the trustee under the will of the donee of the power?" We think that question is involved in the third petition and also that the petition is properly before us, see *Commonwealth-Atlantic National Bank of Boston, petitioner,* 249 Mass. 440, and we do not think the fact that Mabel L. Berry prefers to have the trust for her benefit administered by someone other than the petitioner Lovejoy is of consequence.

The question involved has not heretofore required much of this court's attention. Several English cases have been cited which come to this: where, under a power, an appointment has been made to the trustees of another will or settlement for the benefit of the object of the power, it does not follow as a matter of course that these trustees are entitled to receive the fund from the trustees of the original will or settlement, but the question who are the parties to administer the fund depends upon the intention to be found in the instrument creating the power; and if an intention is there found that the trustees of that instrument shall administer the fund, that intention shall prevail notwithstanding that the donee of the power shall himself otherwise intend. *Busk* v. *Aldam,* L. R. 19 Eq. 16. *In re Paget,* [1898] 1 Ch. 290. *In re Mackenzie,* [1917] 2 Ch. 58. In this last case the judge said the question was whether the execution of the power operated to vest the trust property in the trustees of the will in which the power was executed or to attach the new trusts to the trusts under which the trustees of the settlement which contained the power held the property.

From an examination of the Newhall will it appears that there are two powers. If no appointment were made the intention is clearly expressed that the trust should terminate at the death of the last survivor of the mother and her two sons and that, if there were no issue of the sons living at the termination of the trust, the principal should go to the three named institutions. But if an appointment were made, one sixth of the principal "may be held in trust," which trust should terminate at the death of the wife of the donee of the power. At that time, if he "leaves issue then surviving,"

the principal so held should be distributed to them, or, "in case of there being no issue of either . . . [son] then surviving," such principal should go to the three named institutions. The first power is that each son by will might direct and appoint that a portion of the income of the entire trust estate not exceeding one sixth by each should be payable to a surviving wife "during the continuance of the trust." Clearly there is no indication here of a possible change of trustees. Then the will provides that each son "may . . . further direct and appoint by a last will that at the termination of the trust" a like portion of one sixth "may be held in trust," the income to be paid to a surviving wife "on such terms as he may direct," with ultimate provision for final distribution of the fund. This contemplates a new trust. *In re Mackenzie*, [1917] 2 Ch. 58. The use of the words "then surviving" in their context is indicative of the creation of contingent interests. *Clarke* v. *Fay*, 205 Mass. 228, 231. *Hall* v. *Hall*, 209 Mass. 350, 353. *Security Trust Co. of Lynn* v. *Boyce*, 257 Mass. 586. *Johnson* v. *Brink*, 271 Mass. 521, 531. Furthermore, the power contains a condition which Henry N. Berry did not incorporate in his will, that in the event of no issue of either son "then surviving" the principal should go to the three named institutions.

In the case of *Greenough* v. *Osgood*, 235 Mass. 235, 240, one question submitted to the court was "To whom should your petitioners pay over the said fund and accumulations thereon?" The "fundamental question," however, as the court said, was whether a special power had been duly exercised in whole or in part. Mrs. Osgood, the donor of the power, she being also the donee, by a marriage settlement gave property to trustees upon several interdependent trusts, the one for interpretation being: "And in case the said Edward S. [Osgood] does not survive the said Hannah P. [Mrs. Osgood] then at and from the decease of the said Hannah P. to the use of all and every the child and children of the said Hannah P. for such estates and interests, and in such shares and proportions, and to be vested in him her or them, at such respective ages or times, and in such manner, as the said Hannah P. alone . . . shall direct or appoint."

(Page 238.)   Mrs. Osgood by her will appointed that the rest and residue of her estate be given to her executors in trust to divide the estate into a number of shares equal to the number of living children or those deceased leaving issue, and to pay over the principal of three of these shares to three of her children or their children.   The trustees were to pay the income of the fourth share to a fourth child for his life and at his death to pay over the principal in equal shares to his then living children, or, if there were no such children, then to pay over the principal in equal shares to such of Mrs. Osgood's other children as should then be living or to the issue of such of them as should not then be living.   The court held that the limitation in remainder to the children of the fourth son was void for remoteness because it might vest beyond the limits of the rule against perpetuities, and that this remainder after the life estate of the fourth son vested in Mrs. Osgood's children and their heirs and assigns under the provisions of the marriage settlement applicable in case of default of appointment by her.   The gift to the executors in trust was held to be a proper exercise of the power, and the trustees under the settlement agreement were instructed that the entire fund should be paid over to the executors of Mrs. Osgood's will to be administered by them as trustees for the use and benefit of the children as their interests in the fund appeared.   The trustees in *Greenough* v. *Osgood*, 235 Mass. 235, evidently assumed by their question to the court that they should pay the fund to someone.   The fact that the donor and the donee of the power were the same person may have prompted this.   The scope of the power in that case as to estates to be created, which were to be vested at such times and in such manner as the donee should appoint, is much more sweeping than that in the case before us.   The time for the ultimate disposition of three fourths of the trust fund in that case was at hand; a life estate was all that remained before the disposition of the remaining one fourth should be made.   There were no contingencies as to survivorship, no contingent remaindermen whose interests were created by the original trust, and no annuity the

payments of which were a charge upon the income of the residue. The case is quite different from the one before us and is not controlling.

In *Olney* v. *Balch*, 154 Mass. 318, the testatrix gave the greater part of her estate to trustees to "hold the estate given to them for and during the natural lives of my seven children and the survivor of them, and until the distribution of the principal sum, as is in this instrument hereinafter provided." (Page 319.) A power of appointment was given to her six daughters "to dispose of their several proportions of the principal of the trust estate by will or other testamentary instrument" if dying without issue surviving. (Page 320.) One of the daughters by will exercised her power of appointment. It was held that the power was properly exercised, although the daughter was only entitled to the income from the trust fund, and that the trustees of the donor's will should turn over the daughter's share of her mother's estate to the executors of the daughter's will, they to administer the same under the latter will. The court said that "As a method of administration, it is more simple and convenient to treat the property as assets of the daughter's estate, to be administered by her executors," (page 322), and that the duty of the trustees was well discharged by paying over the requisite sum to the executors of the daughter's will. In the case of *Hill* v. *Treasurer & Receiver General*, 229 Mass. 474, where appointed property was turned over to the executor of the appointor, it was said that this arises merely "as matter of convenience of administration and not of strict legal right. *Olney* v. *Balch*, 154 Mass. 318." (Page 477.) In other cases, most of which are cited in *Greenough* v. *Osgood*, 235 Mass. 235, trustees of the will containing the power of appointment have been directed to pay over appointed funds, but in all of them there is either a provision as to when the trust should terminate with nothing remaining to be done thereafter except to pay over, or an express direction to the trustees to pay upon the happening of some certain event. See *Stone* v. *Forbes*, 189 Mass. 163; *Tudor* v. *Vail*, 195 Mass. 18; *Howland* v. *Parker*, 200 Mass. 204; *Gardiner* v. *Treasurer & Receiver*

*General,* 225 Mass. 355; *North Adams National Bank* v. *Commissioner of Corporations & Taxation,* 268 Mass. 42.

We think that the intention to be attributed to the donor of the power in the case before us is that if a new trust was created by the exercise of the power, as it was, the new trust was to be administered by the trustees under the Newhall will. If the matter of convenience of administration is to be considered where a donee has executed a special power of appointment, as here, it will be more convenient for the Newhall trustees to act and the contingent rights of the three named institutions will be more safely guarded than by a trustee appointed under the donee's will, which contains no reference to them or to their rights.

Costs and expenses of these appeals, as between solicitor and client, to be paid out of the trust fund in controversy, are to be in the discretion of the Probate Court.

On each petition

*Order dismissing the petition affirmed.*