PAUL H. SNOW, administrator, *vs.* PETRAS MIKENAS
(and a companion case[1]).

Suffolk.   September 15, 1977. — December 7, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Attorney at Law,* Compensation. *Probate Court,* Counsel fees. *Contract,* Compensation of attorney.

A Probate Court judge was entitled to inquire on his own initiative into the reasonableness of contingent fee agreements between legatees or heirs and their attorneys and to require those attorneys to establish the reasonableness of the contingent fee agreements as a condition to their receipt of fees pursuant to those agreements. [812-813]

PETITIONS filed in the Probate Court for the county of Suffolk on January 3, 1974.

The cases were heard by *Warner, J.*

The Supreme Judicial Court granted requests for direct appellate review.

*Martin Popper,* of New York (*David I. Cohen* with him) for the defendants.

WILKINS, J. We hold that, on the facts of these appeals, the Probate Court judge was entitled to inquire on his own into the reasonableness of contingent fee agreements between legatees or heirs and their attorneys and that the judge properly could require those attorneys to establish the reasonableness of the contingent fee agreements as a condition to their receipt of fees pursuant to those agreements.

Calas Mikenas died testate on December 1, 1958. Under

---

[1] The other case is Paul H. Snow, administrator, *vs.* Emilia Antano Mikeniene & others. The record and briefs before us are unnecessarily duplicative. A consolidated appeal on a joint record and a single brief from the appellants should have been presented to this court.

his will he gave the residue of his estate to Antanas Mikenas and Petras Mikenas, children of his deceased brother. Each was a resident of Lithuania in the Soviet Union. Antanas died in 1962, survived by a wife and two children, who were also residents of Lithuania. In 1966, Mr. Paul H. Snow was appointed administrator of Antanas's estate in the Commonwealth. In 1970, following intermediate proceedings which need not concern us, Mr. Snow was appointed administrator, with the will annexed, of the estate of Calas Mikenas.

In 1976, two matters were presented in a consolidated hearing in the Probate Court.[2] One concerned the allowance of Mr. Snow's first and final account as administrator of Calas's estate. The other was a petition for distribution in Antanas's estate. The Probate Court entered judgments which in effect authorized the distribution of one-half of the residue of Calas's estate to his nephew Petras and one-half to the heirs of Calas's nephew Antanas. The judgments directed that the distributions be made to the New York law firm of Wolf, Popper, Ross, Wolf & Jones (the Wolf firm), holder of powers of attorney from the distributees, and further directed that the funds so distributed be transmitted to the distributees through Inyurkolleguia, a group of attorneys in Moscow which deals with foreign estate matters. That group collects a fee of up to 10% of what the client receives.

In the course of the hearing, the judge inquired concerning the nature and extent of the legal services furnished by the Wolf firm and by local counsel selected by that firm and concerning the reasonableness of their fees. The evidence disclosed that each client had agreed orally, and subsequently in writing, that the Wolf firm would deduct a fee of 25% of the amount to be received by the client. The Wolf firm and their local counsel agreed to share that fee equally.

---

[2] The record does not reveal the cause of the delay in the distribution of funds. Calas's estate was, for a while, in litigation concerning the ownership of assets held in a savings bank. See *Mikshis* v. *Palionis,* 345 Mass. 316 (1963).

Snow *v.* Mikenas.

The attorneys respectfully declined to offer any additional evidence on the nature and reasonableness of the fees. Their position was that they were requesting no fees from the probate estates. They represented that "our client will take care of our fees in this matter." Their contention was that, in those circumstances, the judge had no authority to make any determination with respect to the amount or the reasonableness of the fees.

In each judgment directing distribution, the judge provided that the Wolf firm and its local counsel were enjoined "from receiving, directly or indirectly, any fees or expenses out of the funds so distributed without the prior specific approval of this Court ...." The attorneys appealed, in their clients' names, only this aspect of the judgments.[3] There is no challenge to the payment of the 10% fee to Inyurkolleguia nor to the judgments in so far as they direct the distribution of funds to specific persons in Lithuania. We granted applications for direct appellate review.

The attorneys argue that a court may inquire into the propriety of a contingent fee arrangement only when the client makes specific complaint about the fees or when a question of fraud, undue advantage, undue influence, overreaching, or duress otherwise comes to the court's attention. They contend that none of these circumstances exists here. As far as appears before us, the clients have made no objection to the contingent fees to be paid. The attorneys contend further that there is nothing about the contingent fee agreements themselves to justify judicial inquiry and that there is no other evidence to support such an investigation. They go to great lengths in arguing that there is

---

[3] The attorneys had standing to appeal in their own right. G. L. c. 215, § 9, as appearing in St. 1975, c. 400, § 57 ("A person aggrieved by ... [a] judgment ... of a probate court ... may ... appeal ..."). The clients' interest in appealing orders designed for their protection is conjectural. The appellants' briefs are written in part in the first person, as if the clients were expressing their own views. Such a circumstance is unusual, and inappropriate particularly where there is no demonstration that the clients have adopted the statements expressed on their behalf by their attorneys, who are the real parties aggrieved.

nothing facially improper about the arrangement which they made with their clients. We agree that contingent fee agreements are not per se improper. We have authorized them by rule of court. See S.J.C. Rule 3:14, 351 Mass. 795 (1967).[4]

The question for consideration here is whether the judge was barred from inquiring into the reasonableness of the contingent fee arrangements. We note initially that the clients live thousands of miles away, do not appear to speak English, and seemingly are in no practical position to object to the amount of the fees. But we do not choose to rest our decision on these special facts. We hold that a judge is authorized to raise the question of the reasonableness of a contingent fee arrangement on his own motion where, as here, the attorney intends to collect his fee from funds to be distributed through him by court order. Judicial inquiry is not foreclosed by the fact of the agreements themselves (cf. *Cameron* v. *Sullivan,* 372 Mass. 128, 132 [1977]), even if they may have been prima facie valid and binding as contracts entered into before the attorney-client relationships were established. *McInerney* v. *Massasoit Greyhound Ass'n, Inc.,* 359 Mass. 339, 352 (1971). In other circumstances, we have placed on an attorney both the burden of going forward with evidence and the burden of persuasion on the issue of the reasonableness of attorney's fees. *First Nat'l Bank* v. *Brink,* 372 Mass. 257, 264 (1977). The same principle should apply here. Accordingly we hold that the judge properly could require the attorneys to establish the reasonableness of the contingent fee agreements as a condition to the receipt of their fees.

What we have said is not affected by the fact that the distributees are in the Soviet Union. The issue here is not whether the attorneys actually represent the distributees or whether the distributees will receive their inheritances. In *DeSautels, petitioner,* 1 Mass. App. Ct. 787 (1974), cited

---

[4] A rule of this court regarding contingent fees was first adopted in 1964, effective January 1, 1965. See 348 Mass. 806 (1964).

by the judge, the Appeals Court stated that attorneys' fees of about one third of an inheritance "for the largely ministerial function of transmitting distributive shares to the heirs would be unconscionable . . . ." *Id.* at 794. The record did not show that the heirs had agreed to pay a contingent fee of such proportions, and, if they had, the Appeals Court indicated that the agreement "would hardly meet our standards of reasonableness." *Id.* We agree that a judge is entitled to inquire into a contingent fee arrangement on his own initiative. That inquiry, however, must be based on the circumstances prevailing at the time the contingent fee agreement was made. S.J.C. Rule 3:14 (6), 351 Mass. 795 (1967). We believe that the judge below cited the *DeSautels* case solely for its discussion of fees and not because the distributees were residents of the Soviet Union.

The judgments are affirmed and the cases remanded to the Probate Court for further proceedings in light of this opinion.

*So ordered.*