HARVEY BEIT vs. PROBATE AND FAMILY COURT DEPARTMENT.

Essex. January 5, 1982. — April 28, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Appeal from interlocutory order, Costs. *Attorney at Law,*
    Assessment of costs. *Judge. Due Process of Law,* Costs.

An attorney against whom costs were assessed for his failure to appear at a
    scheduled trial could not properly seek appellate review until final
    judgment had been entered in the underlying action. [857]
A judge may assess costs against an attorney who fails to appear at a sched-
    uled trial without having obtained a timely continuance. [857-860]
An attorney is constitutionally entitled to notice and a reasonable oppor-
    tunity to be heard before costs are assessed against him for his failure to
    appear at a scheduled trial, and a judge who assesses costs must articu-
    late his reasons for doing so. [860-862]

ORDER for the assessment of costs entered by *Ginsburg,* J.,
in the Essex Division of the Probate and Family Court De-
partment on April 23, 1981.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*John C. Stevens, III (Howard P. Blatchford, Jr.,* with
him) for the plaintiff.

*James A. Aloisi, Jr.,* Assistant Attorney General, for the
defendant.

ABRAMS, J. At issue is whether a judge may impose sanc-
tions on an attorney who fails to appear for trial without
having secured a timely continuance.[1]   The plaintiff, Mr.

---

[1] The issues raised by this appeal were foreshadowed in Kafka's, The
Trial.   "[C]onscious of his own rights, he asked through the telephone
what would happen if he failed to put in an appearance.   'We shall know
where to find you,' was the answer.   'And shall I be punished for not hav-
ing come of my own accord?' asked K., and smiled in anticipation of the

Harvey Beit, is an experienced member of the bar of this Commonwealth.[2] On April 23, 1981, Mr. Beit failed to appear for a scheduled trial on a 1974 divorce libel.[3] Mr. Beit had not obtained a timely continuance. The judge then assessed costs in the amount of $450 against Mr. Beit.[4] Mr. Beit was not present at the time these costs were imposed. On appeal, Mr. Beit contends that a judge has no authority to assess costs except as authorized by statute. See, e.g., G. L. c. 261, §§ 1 - 26. We do not agree. We hold that a judge may assess costs against an attorney who fails to appear at a scheduled trial without having obtained a timely continuance. Mr. Beit also argues that if the judge has the authority to assess costs in these circumstances, the attorney is entitled to notice and an opportunity to be heard. We agree. However, Mr. Beit's appeal is not properly before us. Hence, we do no more than express our views. *Welles-ley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). We believe that Mr. Beit was entitled to notice and an opportunity to speak in his own behalf and explain his absence. We assume that the judge therefore will vacate his order imposing costs on Mr. Beit.

---

reply. 'No,' was the answer. 'Splendid,' said K., 'then what motive could I have for complying with this summons?' 'It is not usual to bring the powers of the Court upon one's own head,' said the voice, becoming fainter and finally dying away. 'It is very rash not to do so,' thought K. as he hung up; 'for after all one should try to find out what those powers are.'" F. Kafka, The Trial 290 (Vintage Books 1969).

[2] Our records indicate that Mr. Beit has been a member of the bar since 1953.

[3] Mr. Beit had entered his appearance for the libellee on September 5, 1980.

[4] The assessment of costs was ordered against "Mr. Beit and/or his client." Thus, we need not reach the issue whether an attorney who is ordered to pay costs for failing to appear must notify his client of this sanction. Where costs are assessed against the lawyer alone, one commentator has suggested that the attorney be required to serve his client with a copy of the order. "This will insure that the client knows of the sanction, can guard against being billed for it, and can even discharge his attorney if he feels that the event warrants such action." Peckham, The Federal Judge as a Case Manager: The New Role in Guiding a Case from Filing to Disposition, 69 Calif. L. Rev. 770, 802 (1981).

We summarize the facts. In March, 1981, a 1974 divorce libel was set for trial in Essex County on April 23, 1981, during a special session intended to alleviate the Essex County Probate Court backlog. On April 22, 1981, one day before the trial date, Mr. Macdonald, the plaintiff's attorney, moved for a continuance. Mr. Beit assented to the plaintiff's request. The judge found that if the case were removed from the list one day before trial, the session would close. The judge concluded that such a result was unfair to the public.[5] The judge, therefore, denied the requested continuance.

On the morning of April 23, 1981, the judge, an assistant registrar, a court officer, a stenographer, the plaintiff, and Mr. Macdonald were present and ready for trial. But the defendant and Mr. Beit did not appear. After a telephone call, a law clerk from Mr. Beit's office appeared and told the court that Mr. Beit had been suffering from back trouble for two weeks and was unable to attend. The judge terminated the session. After the case was called for trial, the judge received a letter dated April 21, 1981, indicating that Mr. Beit would be unable to attend.

The judge found that Mr. Beit knew, or should have known, for two weeks prior to trial that he (Mr. Beit) was unable to go forward on the scheduled trial date. Since Mr. Beit did not seek a timely continuance, the judge ordered Mr. Beit to pay $450 in court costs. Mr. Beit appeals from the assessment of costs.[6]

---

[5] As we read the judge's remarks, the public includes other litigants, members of the bar, as well as the general public.

[6] Before imposing costs, the judge offered to award attorney's fees to Mr. Macdonald's client. Mr. Macdonald declined the judge's offer. Mr. Macdonald's refusal is consistent with most lawyers' recognition that sanctions can be a two-edged sword. By seeking sanctions, a lawyer "can provoke resentment and inspire retaliation." Brazil, Improving Judicial Controls over the Pretrial Development of Civil Actions: Model Rules for Case Management and Sanctions, ABA Research J. 875, 946 (Fall, 1981). Lawyers are reluctant to risk incurring the resentment of other attorneys. Attorneys "who move in the . . . subworld of litigation, who have developed similar styles of practice, and who know one another or at least

We are met at the outset with the question whether the order requiring Mr. Beit to pay costs is properly before us. Under G. L. c. 215, § 9, as appearing in St. 1975, c. 400, § 57, "[a] person aggrieved by an order, judgment, decree or denial of a probate court," may appeal to the full court of the Supreme Judicial Court.[7]  Under this provision, an aggrieved person "may claim an appeal from interlocutory orders as well as final judgments, but absent a report from the trial judge, G. L. c. 215, § 13, an appeal from an interlocutory order will not be heard by an appellate court until a final judgment has been entered" in the underlying action. *Borman* v. *Borman*, 378 Mass. 775, 779 (1979). See *LaRaia* v. *LaRaia*, 329 Mass. 92, 93 (1952); *Lynde* v. *Vose*, 326 Mass. 621, 622 (1951); *Vincent* v. *Plecker*, 319 Mass. 560, 564 (1946). See also G. L. c. 215, § 22. Thus, unless the matter is reported by the trial judge, an attorney who has failed to appear at trial may not appeal an order requiring him to pay costs until final judgment has been entered in the underlying action scheduled for trial. An attorney "ought not to have the power to interrupt the progress of the litigation by piecemeal appeals that cause delay." *Vincent* v. *Plecker, supra* at 563 n.1. See *Borman* v. *Borman*, 378 Mass. 775, 779 (1979).

Moreover, the doctrine of present execution does not allow an attorney to appeal an order to pay costs before the entry of a final judgment in the underlying action. Under

know of one another's law firms . . . believe they have to live with one another; they expect to encounter one another not only in subsequent lawsuits but also in professional organizations and social settings. . . . [Lawyers are therefore] hesitant to initiate public proceedings to punish other [attorneys] or their clients." *Id.* Mr. Macdonald's refusal to accept reimbursement of his client's legal fees is the usual response of a litigation attorney. See Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif. L. Rev. 264, 272 (1979).

[7] Mr. Beit, although not a party, is a "person aggrieved" within the meaning of G. L. c. 215, § 9. To be a person aggrieved, one need only have a pecuniary interest affected by the outcome. See *Ballard* v. *Maguire*, 317 Mass. 130, 131 (1944); *Hirshson* v. *Gormley*, 322 Mass. 130, 131 (1947); *Lovejoy* v. *Bucknam*, 299 Mass. 446, 450 (1938). See also *Snow* v. *Mikenas*, 373 Mass. 809, 811 n.3 (1977).

the doctrine of present execution, we have allowed the immediate appeal of interlocutory orders if appeal after final judgment would be futile. See *Wax* v. *Monks,* 327 Mass. 1, 2-3 (1951); *Lynde* v. *Vose,* 326 Mass. 621, 622 (1951). Cf. *Ferrick* v. *Barry,* 320 Mass. 217, 219 (1946). However, in *Borman* v. *Borman,* 378 Mass. 775, 781-782 (1979), we held that the doctrine of present execution does not apply to orders compelling discovery, and, therefore, discovery orders are not appealable prior to a final judgment. See *United States* v. *Ryan,* 402 U.S. 530, 532-533 (1971); *Cobbledick* v. *United States,* 309 U.S. 323 (1940); 4 Moore's Federal Practice par. 26.83 [3] (1982).

We believe that an order requiring an attorney who fails to appear for trial to pay costs is analogous to a discovery order. Both types of orders are imposed to prevent needless delays in litigation. Absent a report by the trial judge, see G. L. c. 215, § 13, we will not allow an attorney to appeal, before final judgment, an order assessing costs and thereby further delay the client's action.[8] However, since this case has been fully argued on the merits and raises issues that are of great importance to the bar, the judiciary, and the administration of justice, we deem it appropriate to express our views.

Before assessing costs, the judge correctly determined that it is an attorney's obligation to seek a timely continuance if he is unable to appear for a scheduled trial.[9] "The duty of an attorney to punctually present himself in court and diligently continue with a trial he has undertaken and not to

---

[8] If a judge does report the order, see G. L. c. 215, § 13, the proceedings in the Probate Court are not stayed. See G. L. c. 215, § 22.

[9] The pertinent sections of Mass. R. Civ. P. 40, 365 Mass. 802 (1974), read as follows:

"(a) Assignment of Cases for Trial. Cases may be assigned to the appropriate calendar or list for trial or other disposition by order of the court including general rules and orders adopted for the purpose of assignment. Precedence shall be given to actions entitled thereto by statute.

"(b) Continuances. Continuance shall be granted only for good cause, in accordance with general rules and orders which the court may from time to time adopt."

delay it for any personal matter reasonably within his control is clear." *Lyons* v. *Superior Court,* 43 Cal. 2d 755, 758 (1955). "Counsel for litigants, no matter how 'important' their cases are, cannot themselves decide when they wish to appear, or when they will file those papers required in a law suit. Chaos would result. . . . There must be . . . some respect shown to the convenience and rights of other counsel, litigants, and the court itself." *Smith* v. *Stone,* 308 F.2d 15, 18 (9th Cir. 1962). See *Nasser* v. *Isthmian Lines,* 331 F.2d 124, 128 (2d Cir. 1964); *Flaksa* v. *Little River Marine Constr. Co.,* 389 F.2d 885, 887 n.1 (5th Cir. 1968). If judges lacked power to compel attorneys to appear, "the orderly administration of justice [would] be removed from the control of the trial court and placed in the hands of counsel." *Link* v. *Wabash R.R.,* 291 F.2d 542, 547 (7th Cir. 1961), aff'd 370 U.S. 626 (1962).

Judges "have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake." *Crocker* v. *Superior Court,* 208 Mass. 162, 179 (1911). "Simply stated, implicit in the constitutional grant of judicial power is 'authority necessary to the exercise of . . . [that] power.'" *O'Coins, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 510 (1972), quoting from *Opinion of the Justices,* 279 Mass. 607, 609 (1932). Further, "every judge must exercise his inherent powers as necessary to secure the full and effective administration of justice."[10] *O'Coins, Inc., supra* at 574. Among a judge's inherent powers is the authority to make the court's lawful orders effective. Exercising this power, a judge may impose reasonable court costs on an attorney who, by fail-

---

[10] "Every subject of the Commonwealth . . . ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." Art. 11 of the Declaration of Rights of the Massachusetts Constitution. Similarly, the rules of civil procedure are to be construed so as to "secure the just, speedy and inexpensive determination of every action." See Mass. R. Civ. P. 1, as appearing in 379 Mass. 929 (1980).

ing to obtain a timely continuance, delays the adjudication of legitimate claims and defenses, unnecessarily increases clients' litigation expenses, and squanders limited judicial resources.[11] A judge "cannot condone behavior that causes precious time to be wasted away while the court, parties, court personnel, and witnesses await the arrival of an errant attorney." *Murphy* v. *State*, 46 Md. App. 138, 147 (1979). Without an attorney's presence "the wheels of justice must, necessarily, grind to a halt." *Id.* at 146.

Therefore, an attorney who fails to appear for a scheduled trial without having obtained a timely continuance is subject to sanctions. To hold otherwise would insulate irresponsible lawyers from meaningful accountability for their conduct to the detriment of the general public, litigants, and the vast majority of attorneys who behave responsibly.

But if a judge requires an attorney to pay court costs, he must afford him fair notice and a reasonable opportunity to be heard. Without procedural safeguards, "serious due process problems would result were trial courts to use their

---

[11] "The power of a court over members of its bar is at least as great as its authority over litigants." *Roadway Express, Inc.* v. *Piper*, 447 U.S. 752, 766 (1980). Courts often have penalized clients for their attorney's failure to appear. In *Link* v. *Wabash R.R.*, 370 U.S. 626, 636 (1962), the trial court dismissed the plaintiff's case because his lawyer failed to appear at a pretrial conference. Relying on the "inherent power" of the courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," the United States Supreme Court upheld this dismissal. *Link* v. *Wabash R.R.*, *supra* at 630-631. However, in many cases it is unfair and unjust to impose the punishment, for the lawyer's failure to appear, on a client who simply trusted "his lawyer to take care of his case as clients generally do." *Id.* at 636, 643 (Black, J., dissenting). See Note, Dismissal for Failure to Attend a Pretrial Conference and the Use of Sanctions at Preparatory Stages of Litigation, 72 Yale L.J. 819 (1963); Note, Power of Federal Courts to Discipline Attorneys for Delay in Pre-trial Procedure, 38 Notre Dame Law. 158 (1963). "[A]n attorney's neglect or inadvertent error should not deprive his client of his day in court." *Cichorek* v. *Cosgrove*, 47 App. Div. 2d 883 (N.Y. 1975), quoting from *Moran* v. *Rynar*, 39 App. Div. 2d 718, 719 (N.Y. 1972). See also Note, Financial Penalties Imposed Directly Against Attorneys in Litigation Without Resort to the Contempt Power, 26 U.C.L.A. L. Rev. 855, 864-868 (1979). Instead a court should save the action for the client and impose a penalty directly on the attorney.

inherent power, in lieu of the contempt power."[12] *Bauguess* v. *Paine*, 22 Cal. 3d 626, 638 (1978). See Note, Financial Penalties Imposed Directly Against Attorneys in Litigation Without Resort to the Contempt Power, 26 U.C.L.A. L. Rev. 855, 887-892 (1978). Cf. *Roadway Express, Inc.* v. *Piper*, 447 U.S. 752, 767 & n.14 (1980); *Glass* v. *Pfeffer*, 657 F.2d 252, 257 (10th Cir. 1981). A judge may not use the "inherent power" to avoid the requirements of due process. Like other sanctions[13] costs should not be assessed lightly or without fair notice and an opportunity for a hearing. Cf.

---

[12] The judge did not purport to use his contempt powers. Therefore, we do not reach any issues concerning contempt. We add, however, that a wilful failure to appear at a scheduled time is more analogous to indirect contempt than to direct contempt. "There [is] no disruption of the orderly course of proceedings in progress. There [is] no affront to the court before the general public, as might occur during a trial, and there [are] no tactics that require immediate cessation." *Jessup* v. *Clark*, 490 F.2d 1068, 1072 (3d Cir. 1973). A person charged with indirect contempt is entitled to extensive procedural safeguards. See *Furtado* v. *Furtado*, 380 Mass. 137, 142 (1980).

[13] In addition to imposing costs, a judge may refer conduct which violates the Code of Professional Responsibility to the Board of Bar Overseers for disciplinary action. Failure to appear for a scheduled trial may violate several disciplinary rules. See S.J.C. Rule 3:07, DR 7-101 (A), as appearing in 382 Mass. 784 (1981) ("A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules . . . . A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process"); S.J.C. Rule 3:07, DR 7-106 (A), as appearing in 382 Mass. 787 (1981) ("A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling"); S.J.C. Rule 3:07, DR 7-106 (C) (5) (6) (7), as appearing in 382 Mass. 787 (1981) ("In appearing in his professional capacity before a tribunal, a lawyer shall not: . . . (5) Fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of his intent not to comply. (6) Engage in undignified or discourteous conduct which is degrading to a tribunal. (7) Intentionally or habitually violate any established rule of procedure or of evidence"). A lawyer subject to discipline is entitled to notice and an opportunity to be heard. See Rules of the Board of Bar Overseers § 2.5 (1978).

*Roadway Express, Inc.* v. *Piper, supra.* Before imposing costs on an attorney who fails to appear, a judge need not provide the attorney with the full panoply of rights afforded to criminal defendants. Fair notice and a reasonable opportunity to be heard are sufficient to satisfy the requirements of due process. *Id.* See *Glass* v. *Pfeffer,* 657 F.2d 252, 257 (10th Cir. 1981). Further, we believe that a judge who exercises his or her inherent power to impose costs on an attorney must articulate the reasons for the sanction. The requirement of articulation of reasons ensures that the judge will act with restraint. See *Roadway Express, Inc.* v. *Piper,* 447 U.S. 752, 764 (1980); *Gompers* v. *Bucks Stove & Range Co.,* 221 U.S. 418, 450-451 (1911). We also believe that it ensures judicial recognition of the seriousness of imposing sanctions. See Peckham, The Federal Judge as a Case Manager: The New Role in Guiding a Case from Filing to Disposition, 69 Calif. L. Rev. 770, 802 (1981).

Applying these principles to this case, we conclude that the judge had the power to order Mr. Beit to pay costs. Although the judge articulated the reasons for imposing a sanction, he failed to give Mr. Beit notice that costs might be imposed. Mr. Beit also had no opportunity to speak in his own behalf and explain his absence. Since Mr. Beit was denied that opportunity, we assume that the Probate judge will vacate his order requiring Mr. Beit to pay $450 in costs.[14]

*Appeal dismissed.*

---

[14] After hearing, the judge may decide not to impose a sanction, to impose the same sanction, or to increase the amount of the sanction.