JULIE RAMSDELL, THIRD, administratrix,[1] *vs.*
BENJAMIN G. DOLIBER.

No. 00-P-1291.

Essex. November 18, 2002. - September 29, 2003.

Present: DUFFLY, KAFKER, & McHUGH, JJ.

*Practice, Civil,* New trial, Assistance of counsel, Default, Continuance. *Judge.*

Statement of factors to be considered by a judge in a civil case in which a possible sanction against an attorney for noncompliant behavior is one requiring a represented party to proceed to trial without the attorney. [451-452]

This court vacated the denial of a motion by the defendant in a civil action for a new trial and remanded the case for reconsideration of proper sanctions to impose for the defendant's attorney's failure to appear at the first day of the defendant's scheduled jury trial, where it was apparent from the record available to the judge when he denied the defendant's motion that the judge did not adequately consider the appropriate factors before responding to noncompliant behavior of the defendant's attorney by requiring the defendant to proceed to trial in the absence of his attorney. [452-456]

CIVIL ACTION commenced in the Superior Court Department on May 17, 1989.

The case was tried before *Patrick J. King,* J., and a motion for a new trial, filed on October 1, 1998, was considered by him.

*Willie J. Davis* for the defendant.

*David Mech* for the plaintiff.

DUFFLY, J. On April 18, 1989, in a bar fight with the defendant, the plaintiff's decedent, Robert Arsenault, suffered head injuries and died two days later. This wrongful death action was commenced on May 17, 1989. Following the eventual jury trial,[2] a

[1] Of the estate of Robert Arsenault.

[2] The matter was delayed, at least in part, due to the pending criminal proceedings against the defendant, who was charged with manslaughter. In the

Superior Court jury awarded the plaintiff compensatory and punitive damages.[3] Benjamin G. Doliber appeals from the trial judge's denial of the defendant's motion for a new trial without a hearing. The defendant claims that the orders denying a continuance and mistrial resulted in an injustice because he was required to commence trial without his attorney,[4] that plaintiff's closing argument was prejudicial, and that the verdict was excessive and against the weight of the evidence.

*Background.* We summarize the information that was before the motion judge (who was also the trial judge), when he denied the defendant's motion for a new trial. The civil case was almost ten years old when it was scheduled for trial on September 14, 1998. This trial date was continued to September 21, 1998, at the behest of Doliber's trial counsel, Willie J. Davis (Mr. Davis).[5] Soon after this continuance, Mr. Davis filed a motion seeking a

---

1992 trial of the criminal charges, the facts were disputed. The version most favorable to the Commonwealth was that the defendant struck the decedent's head against the floor resulting in his death; the defendant claimed that the decedent accidentally hit his head on the floor as the two of them fell. The jury deadlocked and a mistrial was declared. According to the briefs of both parties, the defendant entered an *Alford* plea to manslaughter. See *Commonwealth* v. *Nikas*, 431 Mass. 453, 455 (2000), quoting from *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343 (1978), cert. denied, 439 U.S. 1120 (1999) ("'[A] defendant may make 'a plea of guilty accompanied by a claim of innocence in accordance with the standards of *North Carolina* v. *Alford*, 400 U.S. 25 [1970]' ").

[3]In answer to special questions, the jury found that the defendant acted maliciously, willfully, wantonly or recklessly, that such conduct was a substantial factor in causing the decedent's death, that the fair monetary value of the decedent to his three children was $168,000, that fair and reasonable medical expenses were $5,613, and that punitive damages were $450,000.

[4]We decline to consider the claim, not raised below, that denial of the motions deprived the defendant of due process rights. *Dutil, petitioner*, 437 Mass. 9, 21-22 (2002).

[5]Docket entries reflect no previously scheduled trial dates, and neither party suggests in the briefs that there had been earlier trial dates. However, the trial transcript reflects that, in response to the trial judge's question regarding any prior trial date, plaintiff's trial counsel said that the case "had at least three, maybe four" trial dates counting the day of trial.

The plaintiff argues that Mr. Davis had previously acted to delay the proceeding by not timely filing his appearance and by seeking a continuance of a pretrial conference. The docket entries reflect that, by order dated January 31, 1996, Doliber's original defense attorney was given leave to withdraw, contingent upon the filing of Mr. Davis's appearance, which occurred two months later, on March 4, 1996; and that Mr. Davis obtained a one-week

further postponement. In his affidavit in support of the motion, Mr. Davis stated that his mother-in-law's death, around Labor Day, required him to accompany his wife, the administratrix of the estate, to North Carolina, where his mother-in-law had resided, "very soon in order to conduct a thorough inventory of the estate." In this affidavit, Mr. Davis also stated that, although he had discussed the possibility of commencing trial on September 21 with the clerk, he could not do so because he was "scheduled to commence a criminal trial in the Boston Municipal Court Jury Session on that date."

The clerk informed Mr. Davis that the judge would hear his motion by telephone at 2:00 P.M. on Friday, September 18, 1998. On September 18, there was no call from Mr. Davis at the appointed time, although both the judge and opposing counsel were waiting for the call. At 3:15 P.M., the clerk called Mr. Davis's office and was told Mr. Davis was not there. The clerk informed Mr. Davis's associate that, if the judge did not hear from Mr. Davis by 4:00 P.M., the case would go forward on Tuesday, September 22, 1998. Mr. Davis did not call.[6] On Monday, September 21, at 3:30 P.M., when the clerk spoke with Mr. Davis to inform him that the case would go forward the next day, Mr. Davis told him that he had plans for that day and would not appear. Mr. Davis failed to appear for trial on Tuesday, September 22.

Doliber was present on the morning of September 22 without Mr. Davis. In response to the trial judge's inquiry, Doliber informed the judge that he had spoken with Mr. Davis on Monday evening and that Mr. Davis had told Doliber he would not be back until the evening of September 22 and that Doliber should appear in court on September 21. Doliber said that he

continuance of the pretrial conference, which by notice dated March 28, 1997, had been scheduled for May 23, 1997. These unremarkable actions cannot, without more, be said to have contributed significantly to the delay in bringing the matter to trial.

[6]Mr. Davis's affidavit, in support of the motion for a new trial, states: "I assumed that the call would be initiated from the Court. I waited in my office until 2:45 P.M.; the call did not come. At that time I left the office to attend a special convocation at Harvard University at which Nelson Mandela was awarded an honorary degree. I did not return to the office until Monday, September 21, in the afternoon." Mr. Davis made no inquiry of the clerk regarding the status of the telephone hearing.

had also called Mr. Davis's office "a few minutes ago," and was told Mr. Davis was in North Carolina.

The judge informed Doliber that the case would go forward with Doliber representing himself. Doliber stated that he wished to have his attorney present, to which the judge responded, "Well, I would like you to have your attorney here too, but he's not here and I can't go out and arrest him. Apparently he's fled the state. So, all I can do — the case is going to go forward."[7] When the case was called for trial and the parties were asked if they were ready for trial, the defendant answered, "I'm not ready, your Honor." The jury selection process then began. The defendant, who had said he did not know how to select jurors, made no peremptory challenges. The plaintiff's attorney made an opening statement. Doliber protested when told he could make an opening statement, saying that he had no idea how to go about making one, to which the judge responded that his attorney could, if he appeared, make an opening statement at the conclusion of the plaintiff's case.

Taking full advantage of the situation, plaintiff's counsel called Doliber as his first witness and questioned him extensively, largely by leading questioning, about the events leading to Arsenault's death and about Doliber's assets. In addition, plaintiff's counsel elicited testimony from a witness to the barroom fight and from Arsenault's sister, the plaintiff, who testified regarding the amount of Arsenault's income and the funds he gave to his children and their mother. Doliber did not cross-examine the witnesses.

On Wednesday, September 23, the second day of trial, Mr. Davis appeared and made a motion for a mistrial, which the judge denied. Mr. Davis then participated in the remainder of

---

[7]Doliber continued to protest, repeating that he would like his attorney to be present, that he paid him, and, "I don't have any idea what's even going on." The judge said "the case will go forward," and presented Doliber with the option of going forward with the jury process or waiving his right to a jury trial.

DOLIBER: "I don't know what's better — best or what isn't best, so —"

THE COURT: "I can't advise you as to that."

DOLIBER: "Okay, so —"

THE COURT: "We'll go forward. All right."

the trial, which concluded that day. Following trial, Mr. Davis filed a motion for a new trial, and it is from the denial of this motion and from the judgment[8] that Doliber now appeals.

*Discussion.* Whether to allow a motion for new trial "typically lies within the sound discretion of the trial judge, and a new trial should not be ordered unless the failure to do so appears inconsistent with substantial justice and affects the substantial rights of the parties." *International Totalizing Sys., Inc.* v. *PepsiCo, Inc.,* 29 Mass. App. Ct. 424, 438 (1990).

The judge extended Mr. Davis ample opportunity to present his motion for a continuance. Even after Mr. Davis failed to participate in the September 18 telephone hearing, or thereafter to call the judge regarding the scheduling of a new trial date, the judge, apparently mindful of Mr. Davis's asserted conflict (that he had a trial in Boston Municipal Court on September 21), scheduled the trial to commence September 22. "The orderly management of the trial list is a legitimate concern of a judge," *Beninati* v. *Beninati,* 18 Mass. App. Ct. 529, 535 (1984), and the judge's denial of the motion to continue made sense in the context of the facts before him.

We focus in this appeal on the judge's response to Mr. Davis's failure to appear for trial.[9] "The duty of an attorney to punctually present himself in court and diligently continue with a trial he has undertaken and not to delay it for any personal matter reasonably within his control is clear." *Beit* v. *Probate & Family Ct. Dept.,* 385 Mass. 854, 858-859 (1982), quoting from *Lyons* v. *Superior Ct.,* 43 Cal. 2d 755, 758 (1955). The judge

---

[8]The defendant makes no argument with regard to the judgment separate from his argument that the motion for a new trial should have been allowed.

[9]Although Doliber, in his brief, states that it is the denial of the motion to continue with which he quarrels, the focus of his argument is the injustice to him of the judge's order, imposed after his attorney failed to appear, that Doliber proceed to trial without his attorney despite his protestation that he was unprepared to defend himself. The trial judge acknowledged Doliber's objection to the sanction, stating: "I understand that you're objecting to my going forward without your attorney. But, under the circumstances, where your attorney, for no apparent good reason, has decided not to be here, I've decided to require that the case go forward. If you're prejudiced somehow as a result, you may have a claim against your attorney for malpractice for not showing up." Whether such a remedy is available to a litigant in circumstances such as this is not before us; our concern here is the appropriateness of the court's response.

could hardly be faulted for concluding that Mr. Davis's failure to appear on September 22 "was without any good reason." Mr. Davis's request for a continuance was apparently based largely on Mr. Davis's desire to attend to a personal matter that, for all that appears, could have been postponed. Faced with such a flagrant disregard of the legitimate concerns of the court, an appropriate sanction was called for. "A judge 'cannot condone behavior that causes precious time to be wasted away while the court, parties, court personnel, and witnesses await the arrival of an errant attorney.' *Murphy* v. *State*, 46 Md. App. 138, 147 (1979). Without an attorney's presence 'the wheels of justice must, necessarily, grind to a halt.' *Id.* at 146." *Beit* v. *Probate & Family Ct. Dept.*, *supra* at 860.

In a civil case, what constitutes an appropriate response to the noncompliant behavior of an attorney will vary in the circumstances of each case. However, where the sanction under consideration is one requiring a represented party to proceed to trial without his attorney, we think that a judge must give consideration to (1) whether the conduct giving rise to the sanction is chargeable to the party or to his legal representative, or both; (2) the nature and extent of potential harm or prejudice to the party,[10] and to the opposing party,[11] of the sanction; and (3) whether, in the face of significant harm or prejudice to a party,

---

[10]Assessing the potential for prejudice to a party as a result of requiring that he proceed to trial unrepresented may also involve consideration of the merits of the party's claim or defense. As to whether there was merit to Doliber's defense, his entry of an *Alford* plea (*North Carolina* v. *Alford*, *supra* at 37-38 & n.10), did not preclude him from denying liability. See *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 747 (1985) (guilty plea may be admitted in evidence, but is not conclusive as to facts admitted; "[t]he plea may be explained and reasons shown for entering it"). On the other hand, even if the trial judge was correct in concluding that there was strong evidence of liability, as he did in this case, damages remained a significant issue.

[11]Three of the plaintiff's four witnesses were Massachusetts residents; the fourth was a resident of New Hampshire. Two witnesses did not appear who had not been subpoenaed, and the plaintiff's attorney also was precluded by the judge from presenting the testimony of his only proposed expert, an actuary, on the basis that there was "no evidence as to what he [Arsenault] was giving" to the mother of his children for their support. Thus, a brief continuance could have aided the plaintiff, and any prejudice might have been addressed through the assessment of fees and costs.

there are suitable alternatives to the sanction of requiring a represented party to proceed to trial without his attorney.[12]

Here, the sanction imposed by the judge penalized a client in the absence of a determination that the client had himself flouted the court's authority or engaged in dilatory tactics that hindered the plaintiff's ability to proceed. Requiring that Doliber — who as far as the record reveals had, well before the eve of trial, engaged the services of an attorney to represent him; did not voluntarily choose to represent himself; and was unprepared to do so — proceed to trial unrepresented was an extraordinary sanction that may have been excessive in the circumstances of this case, including the absence of a showing that Doliber was implicated in the delay. Cf. *Beit* v. *Probate and Family Court Dept., supra* at 860 n.11. ("[I]n many cases it is unfair and unjust to impose the punishment, for the lawyer's failure to appear, on a client who simply trusted 'his lawyer to take care of his case as clients generally do.' [*Link* v. *Wabash R.R.*, 370 U.S. 626,] 643 (Black, J., dissenting). Instead a court should save the action for the client and impose a penalty directly on the attorney"). The judge gave no consideration to the prejudice that was likely to result from requiring the defendant to undertake his own representation, nor did the judge consider, when he had the further opportunity to do so both in connection with the motion for a mistrial and in connection with the motion for a new trial, the substantial prejudice that actually did befall the defendant.

With the benefit of a record that was also available to the judge when he considered the motion for a new trial, it is ap-

---

[12]Our courts have said that similar factors are to be considered prior to dismissing a complaint when a plaintiff fails to appear for trial. See, e.g., *Monahan* v. *Washburn*, 400 Mass. 126, 128-129 (1987) ("Involuntary dismissal is a drastic sanction which should be utilized only in extreme situations. As a minimal requirement, there must be convincing evidence of unreasonable conduct or delay. A judge should also give sufficient consideration to the prejudice that the movant would incur if the motion were denied, and whether there are more suitable, alternative penalties. Concern for the avoidance of a congested calendar must not come at the expense of justice"). Cf. *Keene* v. *Brigham & Women's Hosp., Inc.*, 439 Mass. 223, 235 (2003) (involving the imposition of a sanction for the spoliation of evidence, in which the court states that "[a]s a general rule, a judge should impose the least severe sanction necessary to remedy the prejudice to the [nonoffending] party").

parent that Doliber was substantially prejudiced by the absence of his attorney. As we have noted, the defendant made no peremptory challenges. During the selection process, one of the jurors said that he knew the estate's former administrator, but no inquiry was made or requested about how and why he knew the former administrator or what impact his knowledge might have on his impartiality. That juror was an attorney, was seated, and later became the foreperson.[13] During his opening statement, plaintiff's counsel said that, on the evening in question, the defendant had drunk so much and had become so obnoxious that he had been asked to leave a bar where he had been drinking before he went to the bar where he later fought with Arsenault. No such evidence was introduced during the course of the trial. There was also no evidence introduced in support of opening statements by the plaintiff's counsel that fishermen like the decedent "can make an average of between forty or more thousand a year"; that right after the event in question, the defendant had "transferred almost seven hundred thousand dollars worth of property"; and that Arsenault's children now have "no income, no means of support." The opening statement as a whole was extremely argumentative and would likely have engendered an objection (or, had counsel been present, might never have been made).

On occasion during his examination of Doliber, counsel supplied answers to his own questions or communicated impressions by innuendo when there was no evidence to support them.[14] If there had been objections to these questions, they would likely have been sustained. *Reardon* v. *Boston Elevated Ry.*, 311

---

[13]In his new trial motion, defense counsel, not unreasonably, said he would have challenged the juror peremptorily had he been present during the selection process.

[14]Examples of such questions and answers include the following that concern the amount Doliber had to drink on the night in question and a statement purportedly made by the owner of the bar, who was neither listed nor called as a witness by plaintiff's counsel:

*Q.* "And you had a few drinks, didn't you?"

*A.* "I had supper and something to drink, yeah."

*Q.* "And you had several drinks, at least. And then at some point, you were asked by Mr. Robert Cucuru, the owner, to leave, weren't you?"

Mass. 228, 231 (1942). *Dorfman* v. *TDA Indus., Inc.*, 16 Mass. App. Ct. 714, 718-719 (1983). Cf. *Commonwealth* v. *Fordham*, 417 Mass. 10, 20-21 (1994), and *Commonwealth* v. *Wynter*, 55 Mass. App. Ct. 337 (2002). Plaintiff's counsel also elicited testimony regarding Arsenault's income from Arsenault's sister on the basis of the dubious foundation that she had "happen[ed] to observe, like on a good swordfishing trip, how much [Arsenault] could make." Although the role these prejudicial factors played in the relatively large verdict the jury ultimately returned cannot be precisely determined, the presence of experienced counsel likely would have prevented much of the objectionable testimony and behavior.[15]

In light of the potential prejudice to a party who is without

*A.* "No, I was never asked to leave."

. . .

*Q.* "And he never testified that he told you to leave because you were loud and obnoxious?"

Plaintiff's counsel pursued the following line of questioning regarding Doliber's interest in commercial property, title to which, Doliber had testified, was in the names of three people:

*Q.* "And you ended up selling that doughnut shop in December of that year and the other land for six hundred thousand dollars, didn't you?"

*A.* "Yeah."

*Q.* "What did you do with the money?"

*A.* "Well, it wasn't mine. It was my father's, and my son's, and mine."

*Q.* "It was your father's, but the property was in your name?"

*A.* "No, the property was in —"

*Q.* "What did you do with the money?"

. . .

*Q.* "In any event, you were given about six hundred grand for that property, correct?"

*A.* "I wasn't."

*Q.* "Okay, you weren't. . . ."

[15]Because the defendant's knowledge of, or participation in, his attorney's deliberate failure to appear at trial on the first day is not apparent from the record, this factor requires further exploration and must be considered in combination with other factors we have identified.

It may, of course, appear on reconsideration that this was one of those extraordinary circumstances in which it would be appropriate to require a represented party to proceed to trial without his attorney, because the client was personally implicated in the effort to delay trial. Cf. *Britt* v. *Rosenberg*,

fault in his attorney's failure to appear, alternatives short of requiring that the party proceed unrepresented during trial should be considered. Here, the judge could, for example, have determined whether to enter a default or a default judgment on the issue of liability. Entry of a default or a default judgment would have imposed upon the defendant's attorney the burden, consistent with Mass.R.Civ.P. 55(c), 365 Mass. 823, 828 (1974), to remove the default or judgment or, failing in that effort, to proceed to a hearing to assess damages. See *Clamp-All Corp.* v. *Foresta*, 53 Mass. App. Ct. 795, 810 (2002) (effect of default judgment was to leave open only the question of damages). Cf. *Britt* v. *Rosenberg*, 40 Mass. App. Ct. 552, 554 (1996).

Alternatively, the judge could have granted a continuance and imposed upon the attorney any costs to the opposing party attendant on the delay. See Rule 18 ("[i]n . . . granting a postponement, . . . costs may be awarded and terms imposed in the discretion of the court") and Rule 21 of the Rules of the Superior Court (1974) ("When a case is postponed on the motion of one party, against the objection of the other, the granting of the motion may be upon the condition precedent that the moving party shall pay to the adverse party all his costs and such expenses as the court may allow . . . .").[16]

Because it is apparent that the trial judge did not give adequate consideration to the factors we have described, we vacate the order denying the motion for a new trial and remand for a hearing and reconsideration of the motion. *Menard* v. *Mc-Carthy*, 410 Mass. 125, 129-130 (1991) ("We recognize that a

---

40 Mass. App. Ct. 552, 555 (1996) (where plaintiff and his attorney jointly and separately engaged in numerous dilatory and fraudulent actions and disregarded court orders, "we can say with complete confidence that on this record the judge did not abuse his discretion or otherwise commit an error of law in denying the plaintiff's motion to vacate the default judgment").

[16]In the unusual circumstances of this case, where the issues on appeal were generated by Mr. Davis's failure to appear on the first day of trial, the court, in its discretion, might also include the plaintiff's appellate attorney's fees as a part of any sanction it imposes. Compare *Commonwealth* v. *Rogers*, 46 Mass. App. Ct. 109, 112 n.6 (1999) ("A judge's inherent powers may also permit an assessment of the opponent's counsel fees against the offending attorney"); *Avelino-Wright* v. *Wright*, 51 Mass. App. Ct. 1, 5 (2001) ("[T]he purpose of sanctions is . . . not only to punish but also to compensate the aggrieved litigant for the actual loss incurred by the misconduct of the offending party").

trial judge's decision to grant or deny a new trial should be reversed only for a clear abuse of discretion . . . but we think that it is clear in this case that . . . injustice resulted").

*Conclusion.* The denial of the defendant's motion for a new trial is vacated and the case is remanded to the Superior Court for reconsideration of the defendant's motion for a new trial. On remand, the motion judge is to conduct a hearing to determine whether a new trial should be granted and whether other sanctions would more appropriately address Mr. Davis's failure to represent his client on the first day of trial, in light of the factors outlined in this opinion. The judge may also give consideration to any other relief appropriate in the circumstances. Because of our decision, we do not address the defendant's remaining claims.

*So ordered.*